701 A.2d 143

COMMONWEALTH of Pennsylvania, Appellee,

v.

Joseph CARLTON, Appellant.

COMMONWEALTH of Pennsylvania, Appellee,

v.

Donald CARLTON, Appellant.

Supreme Court of Pennsylvania.

Argued Oct. 17, 1996.

Decided Aug. 22, 1997.

Order November 10, 1997.

John W. Packel, Linda A. Peyton, Philadelphia, for Donald Carlton.

Catherine Marshall, Anthony V. Pomeranz, Philadelphia, for Com. in 32 E.D. Appeal Docket 1996.

Jack M. Myers, Philadelphia, for J. Carlton.

Catherine Marshall, Kathy Echternach, Anthony V. Pomeranz, Philadelphia, for Com. in 41 E.D. Appeal Docket 1996.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION OF THE COURT [1]

FLAHERTY, Chief Justice.

These consolidated cases are appeals from orders of the Superior Court affirming the judgments of sentence of Joseph Carlton and Donald Carlton after they were convicted of drug trafficking offenses. This court granted the appellants' petitions for allowance of appeal to determine whether the police violated the "knock and announce" rule when they executed a valid search warrant and seized crack cocaine, a handgun, ammunition, and drug paraphernalia.

## I. FACTS AND PROCEDURAL HISTORY

On January 28, 1992, Philadelphia police purchased crack cocaine from a house at 3229 Fontain Street in Philadelphia from Joseph Carlton. Based on this purchase, police secured a search warrant for 3229 Fontain Street on January 30, 1992. Later that day, police conducted another cocaine purchase, this time from Donald Carlton, using a marked ten dollar bill. Shortly after the purchase, police saw Donald Carlton leave the house. They radioed a team of backup officers, who were waiting to execute the search warrant. The backup officers arrested Donald Carlton and immediately thereafter executed the search warrant.

In executing the warrant, the officers knocked on the front door and shouted, "Police." After waiting twenty to thirty seconds and receiving no response, the police, using a battering ram, battered the door down. The officers did not announce their purpose before entering the house. Upon entering the house, police arrested Joseph Carlton, who was sitting in the dining room with two vials of crack cocaine in his possession. In various parts of the house, police also found a .38 caliber revolver and ammunition, a bag containing 147 additional vials of crack cocaine, a Wells Fargo identification card for Joseph Carlton showing an address of 3229 Fontain Street and a Pennsylvania Department of Welfare card in the

1. This case was reassigned to this writer on May 14, 1997.

name of Donald Carlton. The trial court stated: "Identification showing that the defendants used 3229 Fontain Street as their address was found in the house." Slip Op., trial court, at 11.

Prior to trial, both appellants moved for suppression of all physical evidence seized in the house, alleging that the police lacked probable cause to search the house and that the police violated the appellants' rights when they executed the search warrant. The appellants did not move for suppression of the drugs they sold to police. Appellants were tried together in a non-jury trial. After denying the motions to suppress, the trial court convicted the appellants of the following offenses:

Joseph Carlton:

One count of possession with intent to deliver a controlled substance, Section 13(a)(30) of the Drug Device and Cosmetic Act (Drug Act), Act of April 14, 1972, P.L. 233, No. 64, § 13(30), 35 P.S. § 780–113(a)(30),

One count of possession of drug paraphernalia, Section 13(a)(33) of the Drug Act, 35 P.S. § 780—113 (a)(33) and

One count of criminal conspiracy, 18 Pa.C.S. § 903.

Donald Carlton:

Two counts of possession with intent to deliver a controlled substance, Section 13(a)(30) of the Drug Act, 35 P.S. § 780–113(a)(30),

One count of possession of drug paraphernalia, Section 13(a)(33) of the Drug Act, 35 P.S. § 780–113(a)(33), and

Criminal conspiracy, 18 Pa.C.S. § 903.

Joseph Carlton was sentenced to one to two years imprisonment for possession with intent to deliver a controlled substance, followed by concurrent two-year terms of probation for criminal conspiracy and possession of drug paraphernalia. Donald Carlton received a sentence of twenty-one to forty-two months imprisonment for the first count of possession with intent to deliver a controlled substance, a concurrent term of twenty-one to forty-two months imprisonment for a second count of possession with intent to deliver a controlled substance, followed by two concurrent terms of two years proba-

tion for criminal conspiracy and possession of drug paraphernalia.

On appeal, the Carltons argued that the police violated their rights because the search warrant affidavit did not state probable cause and because the police violated the knock and announce rule.[2] The Superior Court panel, with one judge dissenting, affirmed the judgments of sentence, holding that exigent circumstances justified the officers' immediate entry into the house without announcing their purpose. This court granted both appellants' petitions for allowance of appeal to determine whether the police violated the knock and announce rule.

## II. DONALD CARLTON

Donald Carlton complains that the police violated his constitutional rights when they entered 3229 Fontain Street without announcing that their purpose was to execute a search warrant. He was arrested on the street near the house and was not inside the house when police entered.

In Pennsylvania, defendants charged with possessory offenses have automatic standing to litigate a suppression motion. *Commonwealth v. Sell,* 504 Pa. 46, 470 A.2d 457 (1983). In *Commonwealth v. Gordon,* 546 Pa. 65, 683 A.2d 253 (1996) and *Commonwealth v. Peterson,* 535 Pa. 492, 636 A.2d 615 (1993) police conducted warrantless entries into abandoned buildings which were occupied by the defendants, where they seized contraband. We held that although defendants charged with possessory offenses have standing to file a motion to suppress the materials seized by police, they must, as part of their case for suppression, meet the threshold requirement of demonstration of a privacy interest which was "actual, societally sanctioned as reasonable, and justifiable in the place invaded.... " *Peterson,* 535 Pa. at 497, 636 A.2d at 617. In *Gordon* we explained that in order to establish a

2. The knock and announce rule is a requirement that police must announce their presence, authority and purpose before a person's privacy may be disturbed.

legally cognizable expectation of privacy, a defendant must establish "either a possessory interest, a legitimate presence or a characteristic of ownership ... from which society could recognize an expectation of privacy." *Gordon,* 546 Pa. at 73, 683 A.2d at 257. In short, in order for a defendant accused of a possessory crime to prevail in a challenge to the search and seizure which provided the evidence used against him, he must, as a threshold matter, establish that he has a legally cognizable expectation of privacy in the premises which were searched.

▓ Donald Carlton, therefore, must establish that he had an expectation of privacy in the premises entered by police. The trial court stated: "Identification showing that the defendants used 3229 Fontain Street as their address was found in the house." Slip Op. at 11. This statement, which is tantamount to a finding of fact, establishes that Donald Carlton had the requisite privacy interest in the premises.[3] Having established that, he may challenge the propriety of the search and seizure.

### III. JOSEPH CARLTON

▓ In Joseph Carlton's case, the sole issue is whether the trial court should have ordered suppression of evidence based on an alleged violation of the knock and announce rule when the police executed a search warrant for the house. Because

---

3. We have examined the record, including the notes of testimony of the suppression hearing and post trial motions, and are unable to find any discussion of Donald's residence, except that defense counsel argued at suppression that there was no evidence that Donald lived at 3229 Fontain Street. The purpose of this argument was to claim that Donald could not have constructively possessed the drug paraphernalia found in the house because it was not established that he was a resident. Apart from this argument, there is no mention of Donald's residence and there is no apparent awareness on the part of the court or counsel that Donald's residence may have been relevant to meet the threshold requirement that he had a legally cognizable privacy interest in the residence at 3229 Fontain Street as a part of his claim that the execution of the search warrant was defective. Where the trial court was not made aware of the issue that is now raised, but made a finding which resolves the issue based on the evidence it had before it, we will not second-guess the finding of the trial court based on arguments which it did not consider.

the Commonwealth's evidence established that Joseph Carlton was present when police entered the house and that he received mail at that address, there is sufficient evidence of record to establish that he had a reasonable and legitimate expectation of privacy in the house at 3229 Fontain Street. Both Joseph and Donald Carlton, therefore, have raised a legally cognizable challenge to the manner in which the search warrant was executed.

## IV. CHALLENGE TO THE SEARCH AND SEIZURE

█ Rule 2007 of the Pennsylvania Rules of Criminal Procedure, Pa. R.Crim.P.2007, sets forth the manner in which the police may enter premises to execute a search warrant:

Rule 2007. MANNER OF ENTRY INTO PREMISES

(a) A law enforcement officer executing a search warrant shall, before entry, give, or make reasonable effort to give notice of his identity, authority and purpose to any occupant of the premises specified in the warrant, unless exigent circumstances require his immediate forcible entry.

(b) Such officer shall await a response for a reasonable period of time after his announcement of identity, authority, and purpose, unless exigent circumstances require his immediate forcible entry.

(c) If the officer is not admitted after such reasonable period, he may forcibly enter the premises and may use as much physical force to effect entry therein as is necessary to execute the search.

Thus, unless there are exigent circumstances, Rule 2007 requires that police officers executing a search warrant should make a reasonable effort to knock and announce their identity and purpose and then wait a reasonable amount of time for the occupants to respond before entering private premises.

The primary purpose of the knock and announce rule is to prevent resistance to lawful authority based on the occupant's efforts to protect his privacy expectation against unauthorized entry of persons unknown to him. *Commonwealth v. McDonnell*, 512 Pa. 172, 516 A.2d 329 (1986). In addition, the knock

and announce rule prevents violence and physical injury to the police and the occupants and protects an occupant's privacy expectation against unauthorized entry of unknown persons, and prevents property damage resulting from forced entry during the execution of a search warrant. *Commonwealth v. Crompton,* 545 Pa. 586, 682 A.2d 286 (1996).

In the present case, the police announced their identity, but did not announce their purpose when executing the search warrant. We have recognized four exceptions to the requirements of the knock and announce rule:

1. the occupants remain silent after repeated knocking and announcing;

2. the police are virtually certain that the occupants of the premises already know their purpose;

3. the police have reason to believe that an announcement prior to entry would imperil their safety; and

4. the police have reason to believe that evidence is about to be destroyed.

*Commonwealth v. Means,* 531 Pa. 504, 508, 614 A.2d 220 (1992). If the Commonwealth establishes any of these exigencies, the police may force entry without knocking, announcing their identity and purpose, or waiting for the occupant to respond. *Means.*

At the motion to suppress, the Commonwealth argues the presence of exigent circumstances as follows:

My other argument, I indicated there were two, your honor, would be at the point that you don't have any response from inside and you know that one of your two suspects that has sold drugs prior, two days prior including that day, is already walking down the street, at that time, your honor. I would argue that exigent circumstances do exist to break in the door at that point.

Because at that point, your honor, they know they've got one and all he's got is money on him, they know that drugs have been sold from inside that location on that day very day, hours before—actually, I don't think it's hours before, minutes before, excuse me, I stand corrected, minutes be-

fore, just five minutes before, and at that point, your honor, where there's no response the logical thing to think is, great we're going to stand out here and the person inside is flushing the drugs down the toilet, or in some way destroying them. So I would argue that at that point they do have exigent circumstances to go in and I would ask you to deny the motion.

N.T. 9/30/92, 62–63.

The Commonwealth's position, in sum, is that because drugs were sold from within the house five minutes before the execution of the warrant, and because one of the two suspects was in custody outside of the house and he did not have drugs on his person, and there was no response to police announcing their identity, whoever remained in the house was destroying evidence.

The Commonwealth's claim of exigent circumstances is flawed. That drugs were sold minutes before suggests nothing except that drugs are probably still on the premises. Donald's arrest without drugs also suggests only that drugs remain on the premises. And that police received no response to their announcement of their identity is not surprising, for there is no requirement that anyone open the door to their dwelling in the absence of police statement of their authority and purpose. In a free society, the mere presence of police does not require an individual to throw open the doors to his house and cower submissively before the uniformed authority of the state. As this court stated in *Commonwealth v. McDonnell,* 512 Pa. 172, 176–77, 516 A.2d 329, 330–31 (1986):

The "knock and announce" rule's origins pre-date the United States Constitution. It was born in English Common Law and was subsequently adopted in America. In recent times, the "knock and announce" rule has assumed a Constitutional dimension. Both our Court and United States Supreme Court have held that the Fourth Amendment's prohibition against unreasonable searches and seizures applies to the manner of a warrant's execution. *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *Commonwealth v. Newman,* 429 Pa. 441, 240 A.2d

795 (1968). Even a valid warrant may not be executed in an unreasonable manner; unreasonableness is determined on a case-by-case basis. *Id.* The rule's primary purpose is to prevent resistance to lawful authority based on the occupant's efforts to protect his privacy expectation against unauthorized entry of persons unknown to him.

In *Commonwealth v. Newman,* we specifically stated: "[W]e hold that the forcible entry without announcement of purpose violates the Fourth Amendment." 429 Pa. 441, 449, 240 A.2d 795, 799 (1968).

■ *Newman*'s categorical statement of its holding notwithstanding, the knock and announce requirement is a rule of reason. There is a presumption that the police will be required to knock and announce their identity, their purpose and their authority, but this requirement will be relaxed in the presence of exigent circumstances. Accordingly, we now hold that in the absence of exigent circumstances, forcible entry without announcement of purpose violates Article 1, Section 8 of the Constitution of Pennsylvania, which prohibits unreasonable searches and seizures.[4]

■ In this case, there were no exigent circumstances. Police, therefore, were required to knock and announce their identity, purpose, and authority. If police had identified themselves *and* stated their authority and purpose, the absence of a response within a reasonable time would have justified a forced entry. In the absence of a statement of

4. The requirement that police announce their identity, purpose and authority is of ancient origin. Although Semayne's Case, 50 Co Rep. 91a, 91b, 77 Eng. Rep. 194, 195 (K.B.1603), which required that an officer "ought to signify the cause of his coming," is often cited as the judicial source of the common-law knock and announce rule, Semayne's case itself refers to a statute enacted in 1275 and indicates that this statute was "but an affirmance of the common law." *Wilson v. Arkansas,* 514 U.S. 927, 932 n. 2, 115 S.Ct. 1914, 1917 n. 2, 131 L.Ed.2d 976, 981 n. 2 (1995).

The English common law rule that a door may be broken down once admittance was refused was incorporated into Pennsylvania law by way of a statute, Act of Dec. 23, 1780, ch. 925 § 5, in 10 Statutes at Large of Pennsylvania 255 (J. Mitchell & H. Flanders comp.1904). *Id.* at 933, 115 S.Ct. at 1917, 131 L.Ed.2d at 982.

authority and purpose, however, it was reasonable and within their constitutional rights that the occupants did not respond. Police may not now bootstrap themselves into exigent circumstances by claiming that the reasonable failure to respond, which they themselves may have caused, was justification for forced entry.

 The Superior Court adopted the trial court's conclusion that there were exigent circumstances by citing the trial court's opinion as follows:

[T]he police had just made an arrest for the sale of drugs immediately outside the house. The person arrested, Donald Carlton, was the brother of the person who had sold drugs to the police on the 28th of January. Although they did not know this particular fact at the time, the police had personal knowledge that at least two persons were engaged in selling drugs from the house. The police could reasonably believe that the other person who had sold drugs from the house, Joseph Carlton, would conclude that his brother had been arrested when he did not return from the drug sale and would destroy the drugs that were in the house. Such a situation falls within the "exigent circumstances" exception to the strict enforcement of the "knock and announce" rule.

Slip Op. at 5–6.

 The lower courts' attempt to justify the battering down of the door are also unavailing. The courts' rationale was, in essence that the suspect remaining in the house would destroy evidence when his co-conspirator did not return "from the drug sale." There are at least two infirmities in this rationale. The first is that there is no evidence that Donald was about to engage in a drug transaction when he was arrested. In fact, the evidence was that when he was arrested, he had no drugs on his person.[5] The second infirmity is

---

5. Officer Joyce Reilly, who participated in the execution of the search warrant at 3229 Fontain Street, testified that she stopped Donald Carlton before executing the search warrant, patted him down, and placed him in the police van. She continued:

Q. Whose person was the buy money on, officer?

that even if Donald had been on his way to a drug sale, the lapse of time between his arrest and the execution of the warrant was so short that Joseph would have had no reason to be alarmed by Donald's absence.[6]

In sum, there were no exigent circumstances and it was error to fail to suppress the evidence seized as a result of the search of the house. Because we have determined that both Donald and Joseph Carlton had a legitimate expectation of privacy in the residence at 3229 Fontain Street, the evidence seized should have been suppressed as to both defendants.

However, the evidence of the drug sales to police from the residence at 3229 Fontain Street remains in the case and the convictions of possession with intent to deliver a controlled substance and criminal conspiracy shall remain undisturbed. The convictions and the judgments of sentence as to possession of drug paraphernalia are vacated as to both Donald and Joseph Carlton.

The Superior Court's order affirming the judgments of sentence is vacated and the convictions and judgments of sentence are modified as indicated above.

## ORDER

PER CURIAM

And now this 10th day of November, 1997, this court's order dated August 22, 1997 is modified as follows: The conviction

---

A. Donald.
Q. And what, if anything else, was confiscated from Donald?

\* \* \*

A. Just the $800 and the buy money.
N.T. 4/9/92, 30–31.

**6.** The Commonwealth also argues in the Joseph Carlton case that exigent circumstances existed because Joseph may have witnessed Donald's arrest. We have plainly and repeatedly stated that police may not create their own exigencies by making arrests within the sight of co-conspirators. *Commonwealth v. Mason,* 535 Pa. 560, 637 A.2d 251 (1993); *Commonwealth v. Melendez,* 544 Pa. 323, 676 A.2d 226 (1996). As we stated in *Melendez:* "Mere speculation that evidence may be destroyed because suspects may learn of police activity is inadequate to justify a warrantless entry, and in any event, police may not bootstrap themselves into exigencies by their own conduct." 544 Pa. at 333, 676 A.2d at 231.

and judgment of sentence with respect to possession with intent to deliver the 149 vials of cocaine found inside the premises is vacated and remanded for a new trial, as is the conviction and judgment of sentence with respect to possession of drug paraphernalia. The convictions of the possession and sale of three vials of cocaine to an undercover police officer and of conspiracy are affirmed, but the sentences for these crimes are vacated and the case is remanded for resentencing for these convictions.

NEWMAN, J., files a dissenting opinion which is joined by CASTILLE, J.

NEWMAN, Justice, dissents.

I respectfully dissent. This Court's scope of review of a suppression court's ruling is limited to determining whether the findings of fact are supported by the record and whether the legal conclusions drawn from those facts are in error. *Commonwealth v. Crompton,* 545 Pa. 586, 682 A.2d 286 (1996); *Commonwealth v. Chambers,* 528 Pa. 403, 598 A.2d 539 (1991). When a defendant has appealed an order denying a motion to suppress evidence, we must consider only the evidence of the prosecution and so much of the evidence for the defense as, fairly read in the context of the record in its entirety, remains uncontradicted. *Commonwealth v. Cortez,* 507 Pa. 529, 491 A.2d 111, *cert. denied,* 474 U.S. 950, 106 S.Ct. 349, 88 L.Ed.2d 297 (1985). If the record supports the facts as the suppression court found them, the facts bind us and we may reverse the suppression court only if the legal conclusions drawn from those facts are in error. *Id.*

Donald Carlton complains that the police violated his constitutional rights when they entered 3229 Fontain Street without announcing that their purpose for going there was to execute a search warrant. However, Donald Carlton was arrested outside on the street and he was not inside that house when the police entered.

In Pennsylvania, defendants charged with possessory offenses have automatic standing to litigate a suppression mo-

tion. *Commonwealth v. Sell,* 504 Pa. 46, 470 A.2d 457 (1983)(defendant charged with receiving stolen property has automatic standing to contest the legality of the seizure). This Court has specifically held that the doctrine of automatic standing applies in cases in which the defendant is charged with possession with intent to deliver a controlled substance. *Commonwealth v. Gordon,* 546 Pa. 65, 683 A.2d 253 (1996), *rehearing denied* (February 18, 1997); *Commonwealth v. Peterson,* 535 Pa. 492, 636 A.2d 615 (1993). Because the Commonwealth charged both appellants in this case with the crime of possession with intent to deliver a controlled substance, both appellants have standing to litigate a motion to suppress physical evidence. I must underscore, however, that the doctrine of automatic standing gives defendants the right to litigate a motion to suppress evidence, but it does not relieve defendants of their burden of proving a reasonable and legitimate expectation of privacy in the searched premises.

Before we analyze the conduct of the police officers in this case, we must first determine whether Donald Carlton had a reasonable and legitimate expectation of privacy in the premises that the police searched. In *Gordon,* we stated that a defendant alleging a violation of his constitutional right to privacy must satisfy the following two-part test:

(1) he or she exhibits a subjective expectation of privacy, and

(2) the expectation of privacy is one that society is prepared to recognize as reasonable and legitimate.

The burden is on the defendant to prove that his subjective expectation of privacy is one that society is willing to recognize as legitimate. *Peterson.*

In *Peterson,* a police officer purchased drugs with chemically treated money through a three-inch hole in a heavily fortified door of an abandoned storefront. After waiting fifteen minutes for reinforcements to arrive, the police announced themselves and broke down the door. Inside, the police recovered cocaine in powdered and crack form. The front part of the store was clearly not in use, and according to

the police, it was uninhabitable. The police arrested the defendant in a back room, which contained a makeshift bed and a bucket used as a receptacle for human waste. They recovered the dye-stained money in the defendant's pocket, and he also had chemical dye on himself. When the police asked the defendant for his address, he gave an address that was different from the building in which the police arrested him. On appeal, this Court held that the defendant had standing to litigate a motion to suppress physical evidence, but he did not have a reasonable and legitimate privacy interest in the searched premises.

When a defendant files a motion to suppress evidence based on an allegation that the police violated his or her constitutional rights when they entered a property, the defendant must demonstrate a privacy interest that was actual, socially sanctioned as reasonable, and justifiable in the place invaded. *Peterson.* As we stated in *Peterson,* the existence of an expectation of privacy is separate and distinct from the question of standing:

> Standing denotes the existence of a legal interest. In the context of this case, the term refers specifically to the appellant's right to have the merits of his suppression motion adjudicated without a preliminary showing of ownership or possession in the premises or effects seized.
>
> * * *
>
> [H]aving had his standing acknowledged, appellant is then required to establish that the challenge he has without question legitimately raised is itself legitimate. In order to so do, he must demonstrate that he held such a privacy interest which was actual, societally sanctioned as reasonable, and justifiable in the place invaded under the Constitution of this Commonwealth, Article I, section 8, to be 'secure ... against unreasonable searches and seizures.'
>
> * * *
>
> **He must, in short, having brought his claim, demonstrate its merits by a showing of his reasonable and legitimate expectation of privacy in the premises ....**

Appellant's automatic standing does not divest him of the evidentiary responsibility to show that the warrantless entry into the storefront by law enforcement personnel violated a reasonable and legitimate expectation of privacy.

535 Pa. at 497, 636 A.2d at 617–618 (citations omitted). It is clear from the *Peterson* decision that a defendant cannot prevail on a suppression motion based on a claim that the police violated someone else's privacy rights. Thus, for Donald Carlton to prevail on his suppression claim, there must be evidence in the record that establishes that he had a reasonable and legitimate expectation of privacy in 3229 Fontain Street.

Donald Carlton did not testify at the suppression hearing and he did not introduce any evidence to prove that he had an expectation of privacy in the premises. He was not present in the house when the police entered the house and there was no evidence that Donald Carlton owned, rented, or leased any portion of the premises. The record is silent about whether he had a key to the house, received mail at that address, was a frequent visitor there, or had a right to exclude others from that property. In fact, Donald Carlton's trial counsel tried to distance his client from the house when he made the following argument before the trial court in support of a motion for a demurrer:

My client is not in the house when it's searched. He's seen coming out of the house. There's no linkage between him and any of the items in the house, and there's an identification there, which is minimal linkage. **That doesn't mean he lives there** . . . .

**That does not establish that he lives there.** That establishes only that he's been there. We don't know how that card got there, he might have been lending it to someone, it might have been stored there . . . .

The only linkage we have is my client exiting the house, selling drugs and his identification inside. **There's no evidence he lives there.** There's no evidence that he knows that there are drugs inside that coat or that there's paraphernalia upstairs.

Notes of testimony, September 30, 1992, pp. 157—160 (emphasis added). Notwithstanding this argument, the majority Opinion allows Donald Carlton to benefit from the constitutional protections that we have traditionally afforded homes pursuant to the Fourth Amendment to the United States Constitution and Article I, Section 8, of the Pennsylvania Constitution.[1]

In his brief to this Court, Donald Carlton does not even attempt to argue that he established that he had a reasonable and legitimate expectation of privacy in the searched property. Instead, he ignores this requirement and attacks the police officers' conduct, claiming that the evidence against him should be suppressed based on the constitutional protection afforded to homes pursuant to the Pennsylvania and United States Constitutions. The only evidence that connected Donald Carlton to 3229 Fontain Street was the testimony of the police officers that Donald Carlton sold crack cocaine to Officer Kittles from that house, that a Department of Public Welfare Card bearing his name was found inside the house, and that he was walking away from the house when the police arrested him. This evidence is insufficient to establish that he had a reasonable and legitimate expectation of privacy in the house.

The majority Opinion states that "there is no apparent awareness on the part of the court or counsel that Donald's residence may have been relevant to meet the threshold

1. When a person uses a building for illegal activity, such as the sale of drugs, in my opinion, it ceases to be a house. As I stated in my dissenting Opinion in *Commonwealth v. Selby*, 547 Pa. 31, 36–38, 688 A.2d 698, 701 (1997):

A home is a private dwelling where individuals live, accumulate their belongings, and perhaps gather with family and friends. Our homes are personal, private places and the right to be secure in one's home is sacrosanct. However, when an individual opens his or her house to the public to operate an illicit business retailing drugs to the neighborhood heroin addicts, that house ceases to be a "home" as that word is commonly used. An individual who uses their living room to sell illicit drugs to members of the public has no greater an expectation of privacy than the owner of a legitimate pharmacy has on the sales floor of their store.

I therefore do not believe that this property should be afforded the constitutional protections that apply to homes.

requirement that he had a legally cognizable privacy interest in the residence." However, the trial court's "apparent awareness" is irrelevant because the existence of a reasonable and legitimate expectation of privacy is always in issue when dealing with suppression of evidence. *Gordon.*

The Majority then concludes that Donald Carlton met this requirement because the trial court's Opinion stated that the police found "identification showing that the defendants used 3229 Fountain Street as their address." I have reviewed the entire record in this case, and there is no evidence in the record to support this "finding." Although there was an identification bearing Joseph Carlton's name at that address, there was no evidence in the record to show that Donald Carlton lived there. The record does not support this finding, and this Court therefore cannot affirm it. *Cortez.*

Because there is no evidence in the record to establish that Donald Carlton had a reasonable and legitimate expectation of privacy there, this Court has no basis to conclude that any of Donald Carlton's constitutionally protected privacy rights were implicated when the police entered the house in this case. The trial court therefore did not err when it denied Donald Carlton's motion to suppress physical evidence.

Although the Superior Court affirmed the denial of Donald Carlton's motion to suppress physical evidence based on the existence of exigent circumstances, this Court should not even address that issue as it relates to this appellant. *See Commonwealth v. O'Shea,* 523 Pa. 384, 567 A.2d 1023 (1989), *cert. denied,* 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 180 (1990) (this Court may affirm a suppression ruling based on any legitimate grounds for the admissibility of the challenged evidence). Accordingly, I would affirm the Order of the Superior Court in Donald Carlton's case.

In Joseph Carlton's case, the sole issue is whether the trial court should have ordered suppression of evidence based on an alleged violation of the knock and announce rule when the police executed a valid search warrant for the house.[2]

2. Because the Commonwealth's evidence established that Joseph Carlton was present when the police entered the house, he received mail at

Unless there are exigent circumstances, Rule 2007 requires that police officers executing a search warrant should make a reasonable effort to knock and announce their identity and purpose and then wait a reasonable amount of time for the occupants to respond before entering private premises. The manner in which the police execute a warrant must be reasonable, and reasonableness must be determined on a case-by-case basis. *Commonwealth v. Newman,* 429 Pa. 441, 240 A.2d 795 (1968). Not every technical violation of Rule 2007 requires suppression of evidence. *Commonwealth v. Stanley,* 498 Pa. 326, 446 A.2d 583 (1982).

The primary purpose of the knock and announce rule is to prevent resistance to lawful authority based on the occupant's efforts to protect his or her privacy expectation against unauthorized entry of persons unknown to him or her. *Commonwealth v. McDonnell,* 512 Pa. 172, 516 A.2d 329 (1986). The knock and announce rule gives the suspect a chance to surrender the premises peacefully in the face of lawful authority. *Commonwealth v. Beard,* 501 Pa. 385, 461 A.2d 790 (1983). In addition, the knock and announce rule prevents violence and physical injury to the police and the occupants and protects an occupant's privacy expectation against the unauthorized entry of unknown persons, and prevents property damage resulting from forced entry during the execution of a search warrant. *Crompton.*

In the present case, the Commonwealth did not introduce any evidence at the suppression hearing or trial showing the police announced their purpose when they knocked on the door and identified themselves as police officers. We must therefore determine whether the police acted reasonably and if there is legal justification that relieved the police of the necessity to announce their purpose. This Court has recognized the following four exceptions to the requirement of the knock and announce rule:

that address, and the police recovered a Wells Fargo identification card issued to Joseph Carlton at that address, there is sufficient evidence in the record to establish that he had a reasonable and legitimate expectation of privacy in that house under existing law. *But see, Selby* (Newman, J., dissenting).

(1) the occupants remain silent after repeated knocking and announcing;

(2) the police are virtually certain that the occupants of the premises already know their purpose;

(3) the police have reason to believe that an announcement prior to entry would imperil their safety; and

(4) the police have reason to believe that evidence is about to be destroyed.

*Commonwealth v. Means*, 531 Pa. 504, 614 A.2d 220 (1992); *Commonwealth v. Chambers*, 528 Pa. 403, 598 A.2d 539 (1991). If the Commonwealth establishes any of these exigencies, the police may force entry without knocking, announcing their identity and purpose, or waiting for the occupant to respond. *Means.*

In *Stanley,* the defendant escaped from prison following his conviction for murder, and the police secured a warrant for his arrest. A concerned citizen called the police after he saw the defendant's photograph in a newspaper and recognized him as a man that was staying in a neighbor's apartment. Police officers went to the apartment, knocked on the door, and announced, "Police." After waiting thirty to sixty seconds with no response, the police forced open the door and apprehended the defendant hiding under a crib with a fully loaded revolver nearby.

On appeal, the defendant in *Stanley* argued that the police violated his rights because they did not announce prior to entering that they were there to execute a search warrant. This Court rejected Stanley's arguments and held that the police officers acted reasonably, stating the following:

[A]ll Fourth Amendment requirements are tempered by considerations of reasonableness under the circumstances.... The purpose of the "knock and announce" requirement is to permit peaceful surrender of the premises before forcible intrusion. After the police knocked and announced their identity, and there was absolutely no response for up to one minute, peaceful surrender of the premises could not reasonably have been anticipated, and

communication of purpose was unnecessary. The Fourth Amendment does not require that the police stand in a corridor talking to a door. The police need not engage in a "futile gesture" when the occupants of the premises remain silent.

Furthermore, it was unnecessary for the police to announce their purpose because of the exigent circumstances which were present, i.e., potential harm and peril to the safety of the police. The Fourth Amendment cannot be interpreted to imperil law enforcement officers. Appellant, who was reported to be armed, had escaped from imprisonment for the crime of murder committed with a firearm. Under these circumstances, by announcing their identity and waiting at all, the police did more than was required by the Fourth Amendment. Rather than cowering beneath a crib, appellant may have been preparing an ambush. Consequently, to have delayed any further would have been risky and foolhardy on the part of the police. The revolver seized during appellant's arrest was properly admitted into evidence.

*Id.* at 334, 446 A.2d at 587. As in *Stanley,* the police in the present case acted reasonably. Because they made two undercover drug purchases from two different sellers, the police officers knew that there was more than one member of this criminal enterprise. In addition to that, Officer Kittles' purchase of crack cocaine five minutes earlier was clear evidence that the occupants of the house were actively involved in selling crack cocaine at the time the police approached the house. This, combined with the fact that the police arrested Donald Carlton on the street after he was spotted three or four houses away, leads to exigent circumstances that render it unreasonable to require the police to stand on the porch waiting and announcing their purpose. Considering the close proximity of Donald Carlton's arrest, it was reasonable for the police to conclude that the other person selling drugs from the house would know that his partner in crime had just been arrested and would proceed to destroy evidence inside the

house. Announcing their purpose before entering was therefore unnecessary for the police.

The Superior Court reached a similar conclusion in *Commonwealth v. Frank*, 413 Pa.Super. 273, 605 A.2d 356 (1992), in which the police conducted visual surveillance and wiretaps of a drug trafficking operation. The police feared that the suspects had detected their surveillance, and began making arrests and seeking search warrants. Before they obtained search warrants, the police saw one suspect getting in his car and attempting to leave his apartment complex. The police arrested the suspect outside and decided to gain immediate entrance into the appellant's apartment. They knocked on the outside door to a shared entrance in the defendant's apartment building and rang the bell for the defendant's apartment. When the defendant opened the door, the police yelled, "Police, open up!" When the defendant opened the outer door, the police seized him and threw him against a wall and told him that they were in the process of obtaining a warrant.

The officers then took the defendant back to his apartment and conducted a sweep search for their own protection. Forty-five minutes later, they learned that a search warrant had been approved. They searched the apartment and recovered numerous vials of crack cocaine and a triple-beam scale in the apartment. The Superior Court held that the manner of the police officers' entry into the apartment was proper due to the existence of exigent circumstances. Although there was no evidence that the defendant in the apartment was aware of the co-defendant's arrest outside, the arrest occurred outside, in broad daylight, and close to the defendant's apartment. Based on these facts, the Superior Court concluded that exigent circumstances negated the need for the police officers to announce their purpose before entering.

Joseph Carlton argues that suppression of evidence is required based on this Court's decision in *Newman;* however, that case is not controlling here because its facts are distinguishable from the present case. In *Newman*, the police went to the defendant's house to execute a search warrant for evidence of illegal gambling activity. When they arrived at

the defendant's house, they knocked on the door and announced in a loud voice that they were police. After no response was forthcoming for approximately twenty seconds, the detectives broke the door and entered the house. This Court held that the police officers' forcible entry without announcing their purpose violated the Fourth Amendment and required suppression of evidence because there were no exigent circumstances that justified their failure to announce their purpose.

There are several important distinctions between the facts of the present case and those of *Newman*. First, *Newman* involved an investigation into an illegal gambling operation and the present case involves the more dangerous crime of trafficking in crack cocaine. This Court cannot ignore the harsh realities of the dangers to narcotics enforcement officers during this era of heavily armed drug dealers. We have repeatedly seen cases in which drug traffickers carry handguns and automatic weapons, prepared to use deadly force to protect their illegal trade. *See, e.g., Commonwealth v. Jones*, 542 Pa. 464, 668 A.2d 491 (1995), *cert. denied*, — U.S. —, 117 S.Ct. 89, 136 L.Ed.2d 45 (1996) (defendants were leaders of a Philadelphia drug trafficking network and committed murder to further their illegal business); *Commonwealth v. Reid*, 537 Pa. 167, 642 A.2d 453, *cert. denied*, 513 U.S. 904, 115 S.Ct. 268, 130 L.Ed.2d 186 (1994) (defendant was a drug gang "enforcer" who murdered an individual that stole drugs); *Commonwealth v. McDonnell*, 512 Pa. 172, 516 A.2d 329 (1986)(police officers executing a search warrant for drugs confiscated cocaine, marijuana, drug paraphernalia, and a sawed-off shotgun); *Commonwealth v. Patterson*, 405 Pa.Super. 17, 591 A.2d 1075 (1991) (the Superior Court took judicial notice of the fact that drug dealers are likely to be armed and dangerous). Thus, the fact that this case involved sales of crack cocaine, rather than the less deadly crime of illegal gambling, distinguishes this case from *Newman*.

Another important factual distinction between this case and *Newman* is Donald Carlton's arrest immediately before the execution of the warrant outside the house. When Donald

Carlton did not return to the house from his walk, during which time he might have been making another drug transaction on a street corner, the individuals inside the house were likely to become suspicious. Indeed, they might have seen the arrest take place because it happened very close to the house. Finally, Officer Kittles' purchase of crack cocaine five minutes before the police executed the warrant clearly alerted the police that occupants of the house were currently involved in drug trafficking at the time that the police officers executed the warrant. Based on these circumstances, the present case involved exigent circumstances that did not exist in *Newman,* which is not controlling here.

Joseph Carlton also argues that our holding in *Chambers* mandates suppression of evidence here. However, the facts of *Chambers* are inapposite to the present case. *Chambers* involved three defendants selling cocaine from inside a residence. Police officers executing a search warrant knocked on the front door of the house, and when one defendant began to open the front door, a police officer with his gun drawn forced the door open, pushed him backwards, and pointed his gun at him. Once inside the house, the officer identified himself as a police officer and told the defendant that they had a search warrant for the house. The officer ordered the defendant to stand against a wall and told him not to move.

In determining whether the police officers' conduct was reasonable under the circumstances, this Court held that the police in *Chambers* violated the knock and announce rule because there was no justification for their conduct, stating the following:

> No justification for the police officers' conduct exists in this case. The Appellees did not remain silent after the police officer knocked; nor does the record show that the Appellees knew of the officer's purpose. The police were neither concerned for their safety nor concerned that evidence was about to be destroyed.

*Id.* at 409, 598 A.2d at 541. In *Chambers,* there were no exigent circumstances because the police neither arrested a codefendant immediately outside the house nor made a drug

purchase before they executed the warrant. Because there were no exigent circumstances in *Chambers*, and the police forced entry into the house without identifying themselves as police officers as the defendant began to open the front door, the facts in *Chambers* are vastly different from the present case. The police in the present case acted reasonably, and when Joseph Carlton did not open the door after twenty to thirty seconds, the officers acted appropriately.

Joseph Carlton also argues that the fact that the police decided to knock and identify themselves at all negates any finding of exigent circumstances. I do not agree. Although exigent circumstances justified their immediate entry into the house, the police officers in this case determined that waiting twenty or thirty seconds before entering was best. This was more than they were legally required to do. As stated previously, this Court upheld a finding of exigent circum-stances in *Stanley* even though the officers waited for approxi-mately one minute after announcing their identity.

Contrary to the defendant's arguments, this reasonable waiting period does not negate the existence of exigent cir-cumstances. I do not find it to be unreasonable that police officers preparing to enter a house known to be a drug storage and trafficking facility, might choose to wait a short period of time before going inside. Although the exigencies of this case justified the immediate entry into the house, the police made a tactical decision to announce themselves before entering a potentially deadly situation. Their conduct in this case dem-onstrates that even in the face of exigent circumstances, the police afforded the defendants more notice and time to re-spond than they were constitutionally required to give.

It is not the function of this Court to second guess the police by substituting our opinion for the judgment of veteran police officers who, armed with years of experience, risk their lives when they enter a house to execute a search warrant. Fortu-nately, Joseph Carlton did not use his accessible handgun to resist the police. Instead, his revolver and ammunition re-mained concealed nearby until the police seized them. Never-theless, predicting when a drug trafficker or user will attack

the police with deadly force is impossible. Bulletproof vests alone cannot adequately protect the police. They must be permitted to assess all of the attendant circumstances and rely on their experience to make such decisions. Based on the facts of this case, we cannot hold that the police officers acted unreasonably. Accordingly, I would hold that the trial court did not err when it denied Joseph Carlton's motion to suppress the evidence seized inside 3229 Fontain Street.

CASTILLE, J., joins this Dissenting Opinion.