J-A16023-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| VINCENT PAUL CHURCH, | |
| Appellant | No. 1244 WDA 2015 |

Appeal from the Judgment of Sentence of July 14, 2015
In the Court of Common Pleas of Westmoreland County
Criminal Division at No(s): CP-65-CR-0000465-2014

BEFORE:  SHOGAN, OLSON and STRASSBURGER,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED AUGUST 24, 2016**

Appellant, Vincent Paul Church, appeals from the judgment of sentence entered on July 14, 2015.  We affirm.

The suppression court made the following factual findings:

Andrew Toth, a narcotics agent from the Office of the Attorney General, testified that he, along with Rostraver and Clairton police officers, were present at [Appellant's] home [in] Belle Vernon, PA [on January 8, 2014].  The officers were armed with a search warrant but, prior to executing the warrant, observed the home for approximately three hours, or until 12:14 p.m. when [Appellant] was seen leaving.  The plan was to conduct surveillance and, when [Appellant] left his home, to follow and stop him.

Once [Appellant] was approximately one[-]half to one mile from his home, a marked police car pulled him over.  Police did not have an arrest warrant nor was any traffic violation committed.  In fact, when police hailed his vehicle, [Appellant] pulled over immediately.

*Retired Senior Judge assigned to the Superior Court.

[Appellant] was informed that there was a search warrant for his residence and for this reason he was being detained. Prior to being placed in the police vehicle[,] he was handcuffed and searched. The search revealed a snuff can located in his back pocket which was opened and found to contain [illegal narcotics].

Once in transit to his home, and thereafter, [Appellant] informed police that no one else was in the home and repeatedly requested that they use his key to open the door in order to avoid damaging it. Police then knocked and announced their identity, presence, and intent, waiting 45-60 seconds before using the key and entering the premises. Once inside, a search revealed narcotics in a white mug, [$3,000.00] in cash, and a safe for which a second warrant was obtained. Agent Toth stated that [Appellant] was arrested as a result of the items that were located during the search of the residence.

Suppression Court Opinion, 2/18/2015, at 1-2 (internal citations omitted).

The procedural history of this case is as follows. On February 13, 2014, the Commonwealth charged Appellant via criminal information with possession of a controlled substance[1] and possession of a controlled substance with intent to deliver.[2] On May 21, 2014, Appellant filed an omnibus pre-trial motion which included a motion to suppress. A suppression hearing was held on September 30, 2014.

On February 18, 2015, the suppression court entered findings of fact and conclusions of law and granted in part and denied in part Appellant's motion to suppress. The suppression court granted the motion to suppress

_____

[1] 35 P.S. § 780-113(a)(16).

[2] 35 P.S. § 780-113(a)(30).

in regards to evidence recovered from the illegal traffic stop; however, it denied the motion to suppress in regards to evidence found in Appellant's residence. Appellant filed a motion to reconsider, which was denied by the suppression court.

Appellant proceeded with a stipulated bench trial on July 14, 2015. The trial court found Appellant guilty of both offenses and sentenced him to 9 to 18 months' incarceration. This timely appeal followed.[3]

Appellant presents two issues for our review:

1. Whether the police illegally executed the search warrant at the home of [A]ppellant [] in violation of Article I, § 8 of the Pennsylvania Constitution and Rule 207 of the Pennsylvania Rules of Criminal Procedure by the failure to comply with the knock and announce rule?

2. Whether the police, by initially illegally arresting and detaining [A]ppellant [] and seizing his house key during that illegal detention, and thereafter using the illegally seized house key to gain entrance to his premises, illegally executed the search warrant?

Appellant's Brief at 3.

Our "standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's

_____

[3] On August 6, 2015, the trial court ordered Appellant to file a concise statement of errors complained of on appeal ("concise statement"). *See* Pa.R.A.P. 1925(b). On August 26, 2015, Appellant filed his concise statement. On September 21, 2015, the trial court issued an order in lieu of an opinion referencing the suppression court's findings of fact and conclusions of law. Both of Appellant's issues were included in his concise statement.

factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." ***Commonwealth v. Garibay***, 106 A.3d 136, 138 (Pa. Super. 2014), *appeal denied*, 123 A.3d 1060 (Pa. 2015) (citation omitted). "[O]ur scope of review is limited to the factual findings and legal conclusions of the suppression court." ***In re L.J.***, 79 A.3d 1073, 1080 (Pa. 2013) (citation omitted). "We may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." ***Commonwealth v. Gary***, 91 A.3d 102, 106 (Pa. 2014) (citation omitted). "Once a defendant files a motion to suppress, the Commonwealth has the burden of proving that the evidence in question was lawfully obtained without violating the defendant's rights." ***Commonwealth v. Fleet***, 114 A.3d 840, 844 (Pa. Super. 2015) (citation omitted).

Appellant's first claim asserts that the police illegally executed the search warrant for Appellant's home by failing to comply with the knock and announce rule. That rule, however, does not apply in this case. Our Supreme Court recognizes four exceptions to the knock and announce rule:

> (1) the occupants remain silent after repeated knocking and announcing; (2) the police are virtually certain that the occupants of the premises already know their purpose; (3) the police have reason to believe that an announcement prior to entry will imperil their safety; and (4) the police have reason to believe that evidence is about to be destroyed.

***Commonwealth v. Means***, 614 A.2d 220, 222-223 (Pa. 1992). In order to invoke one of these exceptions, police officers must only possess reasonable

suspicion that one of the exceptions is satisfied. ***Commonwealth v. Kane***, 940 A.2d 483, 489 (Pa. Super. 2007), *appeal denied*, 951 A.2d 1161 & 951 A.2d 1163 (Pa. 2008).

The Commonwealth argues that the second exception to the knock and announce rule applies in this case. We agree. Contrary to Appellant's contention, ***see*** Appellant's Brief at 19, this Court has held that police have no obligation to knock and announce when they reasonably believe that the residence is unoccupied. ***See Commonwealth v. Baker***, 522 A.2d 643, 646-647 (Pa. Super. 1987) (holding that when the house is unoccupied, the second ***Means*** exception applies). In addition to Appellant's statement to police that the residence was unoccupied, police independently acquired reasonable suspicion to believe that the residence was unoccupied. Officers surveilled Appellant's residence for three hours prior to entering the residence. While doing so, they did not observe anyone, other than Appellant, enter or leave the residence. N.T., 8/29/2014, at 6, 14-15. Accordingly, Appellant is not entitled to relief on this issue.

In his next issue, Appellant argues that the police illegally executed the search warrant by using his house key. Appellant's Brief at 29. Specifically, Appellant contends that the house key was illegally seized from him as a result of his unlawful detention. The suppression court found, and the Commonwealth does not contest, that Appellant's detention was unlawful. Suppression Court Opinion, 2/18/2015, at 4; Commonwealth's

Brief at 13. Appellant argues that consent during an unlawful detention is *ipso facto* involuntary.

We find most of the cases cited by Appellant in his brief inapposite to the case at bar. In most of the cases cited by Appellant, police lacked an independent, legal justification to conduct the challenged search. Instead, in most of the cases cited by Appellant, the police only conducted the search because of the illegal detention. *E.g., Commonwealth v. Acosta*, 815 A.2d 1078 (Pa. Super. 2003) (*en banc*), *appeal denied*, 839 A.2d 350 (Pa. 2003); *Commonwealth v. Key*, 789 A.2d 282 (Pa. Super. 2001), *appeal denied*, 805 A.2d 521 (Pa. 2002). Here, the police had a valid search warrant authorizing entry into Appellant's residence long before they detained him.

Appellant argues that *Commonwealth v. Melendez*, 676 A.2d 226 (Pa. 1996), is "perhaps the most similar case to the present" case. Appellant's Brief at 35. Although there are some similarities between the case *sub judice* and *Melendez*, the factual differences between the two cases are legally significant. In *Melendez*, the police illegally stopped Melendez

> then transported Melendez back to her house, where they used her keys to gain entrance. . . . Police then secured the house and its occupants and waited for communication as to whether or not the search warrant had been approved. For approximately an hour, police waited at the scene with both occupants of the dwelling, but did not conduct a search. Finally, the warrant arrived and they searched the house, finding drugs,

cash[,] and other evidence which was used to obtain the convictions.

*Id.* at 227. Our Supreme Court held that the drugs, cash, and other evidence must be suppressed because they were the fruits of an illegal search. *Id.* at 228-230. Key to this determination was the fact that (1) Melendez did not voluntarily consent to police searching her residence and (2) "[g]overnment agents may not enter private dwellings through the use of battering rams . . . or by effecting illegal stops and seizures as in this case, and secure the premises by detaining those who occupy the premises while police **wait to learn whether their application for a warrant has been approved.**" *Id.* at 231 (emphasis added).

In this case, police did not search the residence based upon Appellant's alleged consent like the police did in *Melendez*. Furthermore, in the case at bar, police already had a search warrant for the residence prior to illegally detaining Appellant. Police did not detain Appellant and then wait for their search warrant application to be approved. This distinction is critical because in *Melendez* police had no idea whether their search warrant application would be approved. Thus, their use of the key to enter the residence prior to approval and issuance of the search warrant violated the occupants' rights under the United States and Pennsylvania constitutions. In this case, police already had a search warrant in hand. Thus, they had the authority to enter Appellant's residence whether they used the key, a battering ram, or some other method.

We find instructive our Supreme Court's decision in ***Commonwealth v. Carlton***, 701 A.2d 143 (Pa. 1997), for two reasons. First, in ***Carlton*** our Supreme Court held that police are authorized to use force when executing a search warrant if they possess reasonable suspicion that the residence is unoccupied. ***See id.*** at 147, *citing* ***Means***, 614 A.2d 220. As noted above, police possessed reasonable suspicion that Appellant's residence was unoccupied and thus they had the authority to use force to enter the residence. One option for the use of force was a battering ram; however, Appellant asked police not to use that option and to instead use his key. The use of the key, as Appellant argues, was a use of force. Police chose to use the manner of force requested by Appellant. By granting Appellant's request, the police merely chose the least destructive option to enter the residence. Thus, the police neither requested nor recovered Appellant's key for purposes of securing his consent to search the home and seize contraband maintained therein. The use of Appellant's house key in this case was plainly practical, not evidentiary, as the suppression court correctly found. The remedy for evidence gathered during an illegal detention is suppression and he received that remedy in this case. Appellant's effort to extend the remedy of suppression to preclude extra-judicial utility stretches our search and seizure jurisprudence too far.

That leads to the second reason we find ***Carlton*** instructive. In ***Carlton***, our Supreme Court emphasized that one of the key reasons for the

knock and announce rule is to "prevent[] property damage resulting from forced entry during the execution of a search warrant." *Id.* at 146, *citing* ***Commonwealth v. Crompton***, 682 A.2d 286 (Pa. 1996). If we adopted the reasoning advanced by Appellant, we would eviscerate this purpose by holding that the police could have legally searched the residence if they used a battering ram but their use of Appellant's key invalidated the search. The knock and announce rule, and other United States and Pennsylvania constitutional jurisprudence, is meant to protect the privacy interests of citizens. We refuse to adopt a rule that not only encourages, but requires, that police destroy a citizen's property in order to prevent suppression of evidence gathered pursuant to a lawful search warrant.

Appellant's unlawful detention did not go unaddressed. The suppression court correctly suppressed all evidence seized from Appellant's person. Furthermore, although the record is unclear as to whether the key was subject to the suppression court's suppression order, the Commonwealth did not offer the key into evidence. Thus, Appellant got the full benefit of the suppression court's ruling. Nothing gathered as a result of the illegal detention was used against him at trial. Police had the right to enter his home by virtue of the lawfully issued search warrant. The mere fact that police used Appellant's key to enter his residence does not require the suppression of the items found in the residence.

Appellant also relies on the Court of Appeals of Ohio's decision in *Ohio v. Thompson*, 659 N.E.2d 1297 (Ohio Ct. App. 1995), *appeal dismissed*, 655 N.E.2d 738 (Ohio 1995), in support of his argument that using illegally seized keys to conduct a search requires suppression of any evidence found during that search. Contrary to Appellant's argument, however, police did not have a search warrant for the vehicle they opened with the illegally seized keys. Instead, the police relied upon the defendant's consent, which they received during the course of an illegal detention, to conduct the search of the vehicle. *See Thompson*, 659 N.E.2d at 1299. Therefore, *Thompson* is distinguishable from the case at bar for the same reasons that *Acosta*, *Key*, and similar cases are distinguishable.

The police in this case unlawfully detained Appellant and the suppression court properly excluded evidence gathered as a result of that illegal detention. Nevertheless, the suppression court properly denied Appellant's suppression motion as to evidence recovered from a search conducted pursuant to a lawfully issued search warrant. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/24/2016