2023 PA Super 136

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL GOODIS | : | |
| | : | |
| Appellant | : | No. 701 WDA 2021 |

Appeal from the Judgment of Sentence Entered January 8, 2021
In the Court of Common Pleas of Westmoreland County
Criminal Division at No(s): CP-65-CR-0001278-2017

BEFORE:   MURRAY, J., SULLIVAN, J., and COLINS, J.[*]

CONCURRING OPINION BY SULLIVAN, J.:      **FILED: July 28, 2023**

After careful consideration of the record and the narrowly-construed case law regarding the "knock and announce rule" and its exceptions, I am constrained to join the majority opinion because the Commonwealth's evidence did not strictly comply with the rule or neatly fit into its carved-out exceptions.  However, I write separately to emphasize that the actions of the law enforcement officers in serving the warrant in this case complied with the general principles of the rule by balancing Goodis's privacy interests and the officers' personal safety concerns in a situation where the officers perceived a legitimate safety risk.  This balance is borne out by six videos from Goodis's own security cameras which were admitted by stipulation at the suppression hearing.  *See* N.T. 7/20/18, at 6, Exhibit A, Videos 1-6.

---

[*] Retired Senior Judge assigned to the Superior Court.

This Court is bound by the trial court's findings of fact so long as they are supported by the record, but it reviews questions of law *de novo*. **See Commonwealth v. McMahon**, 280 A.3d 1069, 1071 (Pa. Super. 2022) (citing **Commonwealth v. Yandamuri**, 159 A.3d 503, 506 (Pa. 2017). When the Commonwealth prevails at the suppression hearing, the Court may only consider the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. **See id**. The Court's scope of review is limited to the suppression hearing record. **See id**.

The knock and announce rule requires that before entering a dwelling to execute a search warrant police must announce their identity, purpose, and authority and give the occupant a reasonable period of time after the announcement to admit them, absent exigent circumstances that require immediate forcible entry. **See** Pa.R.Crim.P. 207; **Commonwealth v. Frederick**, 124 A.3d 748, 754-56 (Pa. Super. 2015). The rule seeks to prevent resistance by an occupant to protect his privacy, prevent violence and physical injury to police and occupants, protect an occupant's privacy expectation, and prevent property damage resulting from forced entry. **See Commonwealth v. Carlton**, 701 A.2d 143, 146 (Pa. 1997). Exigent circumstances permitting non-compliance with the knock and announce rule include situations where the police have reason to believe that an announcement prior to entry would imperil their safety. **See Frederick**, 124

A.3d at 755. The remedy for a knock and announce violation is always suppression. **See id**.

As Goodis's own surveillance videos establish, his house is in a rural area and Officers David Lepovsky and Brian Sadlowe, and Lieutenant Robert Jones, who went to Goodis's house to execute the search warrant needed thirty seconds to walk a long pathway from the street to the house in full view of Goodis's security cameras. **See** Exhibit A, Video 1 at 0:00-0:30. A separate video shows that before approaching the front door, the law enforcement officers conducted a search of the perimeter of the house and garage. **See** Exhibit A, Video 2 at 0:00-0:56. Officer Lepovsky testified that none of the officers saw any evidence to suggest that anyone was in the house. **See** N.T., 7/20/18, at 9-11.[1]

---

[1] The police exercise of caution before approaching the house comported with the protection of both Goodis and the officers, who face an increasing risk of ambushes from citizens particularly when they go to serve arrest or search warrants at citizens' residences. **See** https://cbsnews.com/philadelphia/james-oconnor-hassan-elliott-philadelphia-police-swat-officer-shot-and-killed-while-serving-warrant-in-frankford/ (last viewed July 20, 2023) (reporting that Philadelphia Police Officer was killed while serving warrant at suspect's home); https://www.cbsnews.com/sanfrancisco/news/gilroy-police-officer-involved-fatal-shooting-ambush-wanted-attempted-murder/ (last viewed July 20, 2023) (reporting that a man called police purportedly to surrender on an attempted murder charge, then opened fire on an officer who arrived at the address to which he had summoned police); https://www.charlotteobserver.com/news/local_crime/article248942479.html (last viewed July 20, 2023) (reporting that two FBI agents attempting to execute a search warrant were killed when a gunman opened fire from inside
*(Footnote Continued Next Page)*

Another third video shows that in apparent response to a knock, Goodis looked at the kitchen door window toward the three officers, who stood in the sunlight. Goodis, who was wearing a shirt, held up his right finger signaling the officers to wait and disappeared from the officers' view. *See* Exhibit A, Video 4 at 0:08-0:10, N.T. 7/20/18, at 12. Officer Lepovsky opened the unlocked door and from outside the house and stated, "Hey, Buddy, are you alright?" Goodis stated, "Yeah, I'm good," and returned to the uniformed officer's line of vision. Still outside the house, Officer Lepovsky said, "Hey come here, come out here and talk to me." *See id*. at 0:10-0:16. Goodis again held up his finger, said something inaudible, and again disappeared from the officer's sight. *See id.* at 0:12-0:18.

Officer Lepovsky said, "Okay, alright," he drew his gun, pointed it at the ground, and slowly took four steps toward the kitchen. Goodis put on sweatpants. *See id*. at 0:17-0:22. Officer Lepovsky asked, "Are you by yourself?" Goodis returned to the officer's line of sight and answered, "Yes." With his gun still pointed down, Officer Lepovsky said, "I don't like, I don't like it when you walk away from me, you know what I mean? I see you holding up one finger and then you walk away." Goodis took two steps toward the officer. *See id*. at 0:23-0:31.

_____

his home having monitored the approach of agents with a doorbell camera and shot them through the unopened door with an assault rifle).

Officer Lepovsky kept his gun pointed at the ground, gestured for Goodis to join him, backed up, and said, "Come on out here, I'm going to put this back here," referring to his gun, and asked, "What's your . . . name" as he stepped outside of the house and replaced his gun in its holster. Goodis followed him and answered, "Michael." **See id**. at 0:31-0:36. As Goodis reached the door, Officer Lepovsky introduced himself from outside the residence. **See id**. at 0:36-0:38. Officer Sadlowe and Lieutenant Jones introduced themselves and Lieutenant Jones answered Goodis's questioning about how he was doing by saying, "Good. I'm here because I have a search warrant for your residence today." Goodis answered, "Okay." Lieutenant Jones stated, "I'll let you read everything. You're not under arrest at this point." **See id**. at 0:46-0:49.

Plainly, Officer Lepovsky never aimed his gun at Goodis and once the safety concern of Goodis's disappearances from his sight dissipated, the officer backed up, put his gun away, and left the house, leading to a discussion at the door among Goodis and the three officers without any search having taken place. After the conversation at the doorway, Goodis is seen ushering the police into the house and showing them a computer in a backpack at the kitchen table. **See** Exhibit A, Videos 5 and 6. Tellingly, there is no show of force and the conduct appears entirely consensual. However, although I agree with the trial court that an overly technical approach to the knock and announce rule is inadvisable where the police conduct is reasonable and the

purpose of the rule has not been offended, that is not the law.  Here, testifying more than two years after the event, none of the officers could say with certainty that they had announced their identity and purpose prior to entry[2] and Officer Lepovsky did not have a pre-existing safety concern, and that is what the current case law focuses on.[3]

The exclusionary rule is intended to deter illegal police conduct and protect against unreasonable searches and seizures.  *See United States v. Calandra*, 414 U.S. 338, 347 (Pa. 1974); *Commonwealth v. Edmunds*, 586 A.2d 887, 899 (Pa. 1991).  Those purposes are not furthered by the result in this case.  I agree with the trial court's assessment that the police had a legitimate concern for their safety, *see* Trial Court Opinion, 9/13/18, at 5.  We should not have the strict letter of the rule swallow up good, commonsense responses to law enforcement's legitimate safety concerns, but the case law

_____

[2] The microphone from Video 4 did not fully capture sounds made outside the house while the door was closed.

[3] Notably, the videos from Goodis's own security cameras contradict his suppression hearing testimony that he emerged naked from his shower and saw people standing outside, and did not have any clothing on, and further that he walked to his left into the kitchen upon seeing the police "to at least get a t-shirt and some boxers on, and before I . . ..  Before I was able to do anything, I was basically being held point blank at gunpoint in my kitchen."  *See* N.T., 1/29/18, at 22-23 (intervening question omitted).  Exhibit A Videos 3 and 4 show that Goodis was not naked at the time of the police entry but wore a shirt, boxer shorts, and socks.  Further, footage from Video 4 shows that Goodis was not "basically being held point blank at gunpoint" in his kitchen; Officer Lepovsky kept his gun pointed to the ground at all times.  *See* Video 4 at 0:17-0:36.

in this area is clear enough to warrant reversal despite my reticence. Because the case law concerning the safety exception in knock and announce cases is well developed in this Commonwealth and the facts here do not comply with the narrow exception, I concur in the majority opinion.