605 A.2d 356

COMMONWEALTH of Pennsylvania

v.

Kyle FRANK, Appellant.

Superior Court of Pennsylvania.

Submitted Dec. 9, 1991.

Filed March 16, 1992.

274

Daniel Silverman, Philadelphia, for appellant.

Donna G. Zucker, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before BECK, POPOVICH and HESTER, JJ.

HESTER, Judge:

Kyle Frank appeals the June 11, 1991 judgment of sentence of three to eight years imprisonment entered by the Court of Common Pleas of Philadelphia County after he was found guilty at a nonjury trial of possession of cocaine with intent to deliver. Appellant's sole argument on appeal is that the suppression court erred in refusing to suppress evidence seized by police when they entered his apartment without a warrant and without appellant's consent. We find no merit in appellant's argument; accordingly, we affirm.

■ Our standard of review of a denial of a motion to suppress is clear. In *Commonwealth v. Ariondo*, 397 Pa.Super. 364, 580 A.2d 341 (1990), we stated that we must:

determine whether the factual findings of the suppression court are supported by the record. In making this determination, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense, as, fairly read in the context of the record as a whole, remains uncontradicted. If, when so viewed, the evidence supports the factual findings, we are bound by such findings and may only reverse if the legal conclusions drawn therefrom are in error. *Commonwealth v. Trenge*, 305 Pa.Super 386, 451 A.2d 701 (1982).

*Id.*, 397 Pa.Super. at 367, 580 A.2d at 342–43. *Accord: Commonwealth v. Bruner*, 388 Pa.Super. 82, 564 A.2d 1277 (1989).

■ Bearing these principles in mind, our examination of the record reveals the following. Police obtained authority to tap Albert Washington's telephone based partially on a list of beeper numbers which had been seized in a search

incident to an unrelated drug arrest. Over the course of their investigation, police monitored over twelve hundred of Washington's telephone conversations, many of which were made to appellant. Experienced investigators concluded that many of these conversations which contained references to video casettes in fact were referring to drug sales. The conversations revealed that Washington and appellant were part of a Philadelphia drug distribution network.

The nature of the taped conversations indicated that appellant's role was to have his apartment serve as the "stash house." This meant that appellant would store part of the drugs as well as measuring paraphernalia so that if Washington's drug deals were observed, no large quantity of drugs or paraphernalia would be seized at any one time. The investigation further revealed that on March 30, 1990, Washington was to receive nine ounces of cocaine from William Minor at a local diner in North Philadelphia.

On the day in question, police officers observed Minor and Washington meet but feared that Minor had detected their surveillance. This was confirmed by a subsequent, cryptic and nonsensical telephone call monitored by police in which Minor attempted to alert Washington. The police determined that they had to end their surveillance and begin making arrests. Search warrants were sought for the apartments that were occupied by Washington and appellant which were in the same apartment complex. Meanwhile, officers were posted to prevent Washington from leaving the apartment complex.

At approximately 1:45 p.m., before search warrants could be secured, Washington was observed getting into his automobile and attempting to leave the apartment complex. Police blocked his exit in an alleyway coming from the garage in the rear of the complex, which also was situated between Washington's apartment and appellant's apartment. The police drew their weapons and placed Washington under arrest within minutes and without commotion. Washington was placed in handcuffs and led to his apartment. The police then decided to gain immediate entrance

to appellant's apartment since they feared that he might have observed them seize Washington and that he might succeed in destroying the drugs and other evidence in his apartment before the search warrant for his apartment arrived.

Detective Terrence Jones and Sergeant Daniel Rodriguez knocked on the outside door and rang the bell to appellant's apartment. Appellant's apartment shared an entrance with several other apartments. Appellant appeared partially dressed and asked who was there. Notes of Testimony, 3/5/91, at 41. They responded by stating, "Police, Open Up." *Id.*, at 41. Appellant opened the outer door. Detective Jones and Sergeant Rodriguez then seized appellant, threw him against the wall, and informed him that a warrant was being obtained. They grabbed his arm and escorted him to his apartment with their guns drawn. They did not seek appellant's consent to search his apartment.

Instead, Detective Jones and Sergeant Rodriquez entered the apartment and forced appellant and a male guest, Derrick Barnes, who was found sleeping on appellant's couch, to lie on the floor. Appellant and Barnes were held on the floor at gun point until a preliminary sweep-search of the apartment was conducted. Appellant and Barnes then were handcuffed and placed on the couch while police awaited word that the search warrant had been signed. Forty-five minutes later, the police learned that the search warrant had been signed. They then conducted a complete search of appellant's apartment and discovered one hundred ninety vials with plastic caps of various colors which contained a white powder that subsequently tested positive for crack cocaine. They also discovered a triple beam Ohaus scale.

While conceding that ample probable cause existed to obtain a search warrant, appellant argues that the officers entered his apartment before a warrant was obtained under a ruse indicating that a valid warrant already had been obtained. Appellant contends that the police stated that they had a warrant to gain entry before he let them

through the outer door when, in fact, that was not the case. Appellant maintains that the burden is on the Commonwealth to show that the search or seizure of the evidence was legitimate and that the evidence therefore is admissible. *Commonwealth v. Chambers,* 385 Pa.Super. 605, 561 A.2d 1257 (1989). Consequently, appellant argues, the Commonwealth failed to meet its burden to show that the subsequent search was not illegal; therefore all of the substances which were seized in his apartment must be suppressed as fruit of the illegal entry. In support, appellant relies upon *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) and *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), for the proposition that the warrantless entry of homes and the armed seizure of persons presumptively are unreasonable.

He further contends that only in rare cases will the requirement for search warrants be excused. *E.g., United States v. Santana,* 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976) (search warrant is not required for a search after a hot pursuit of a fleeing felon); *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); (search warrant is not required where permission to search was given by a spouse); *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (threat of destruction of evidence). Appellant also asserts that the instant situation does not fit within the exigent circumstances exception to a warrantless search since the emergency in reality was created by the police themselves. *See Commonwealth v. Ariondo, supra* (exigent circumstances not found where police themselves created the emergency). Finally, appellant asserts that conduct by police in holding him at gun point for forty-five minutes without a warrant is so outrageous that it should not be tolerated and therefore the evidence should be suppressed. We disagree.

Instantly, the suppression court determined that appellant opened the door when police shouted "open up," which was before the police informed him they had a warrant. Also, the trial court accepted the police version of events in

which they informed appellant only that a warrant was being obtained. Accordingly, the trial court found that the police properly obtained entry into the apartment building and escorted appellant to his apartment. Further, police testified that appellant and Barnes were not held on the floor at gun point the entire time but were placed on the couch handcuffed to each other. Indeed, the court credited the police testimony that appellant, his companion, and police watched a movie together until word was received that a warrant had been signed. We are bound by the facts as determined by the trial court as the factfinder since it is free to accept or reject any version of the evidence. *Commonwealth v. Ariondo, supra.*

Furthermore, the trial court determined that this was an instance of exigent circumstances. Although there is no evidence that appellant was aware of Washington's arrest, the arrest occurred in the open, in broad daylight, and close to appellant's apartment. Certainly, there was an objective basis for the officers to conclude at that time in the totality of the circumstances that a *risk* existed that appellant observed the arrest and would succeed in destroying critical evidence. A warrantless search will be upheld where evidence may be destroyed or where police or innocent persons face a threat of physical harm. *Commonwealth v. Ehrsam*, 355 Pa.Super 40, 512 A.2d 1199 (1986); *Commonwealth v. Hinkson*, 315 Pa.Super. 23, 461 A.2d 616 (1983).

Moreover, while it is true that this situation resulted from the police decision to stop and arrest Washington, it also was Washington's action in attempting to leave the apartment complex which prompted the decision to arrest him. We conclude that this is not an instance in which police manufactured the exigent circumstances; it thus can be distinguished from cases in which police could control the timing of the search. *Compare Commonwealth v. Ariondo, supra* (police removed the greater part of the drugs in a package in the mail and then entered a house after it had been delivered out of fear that their tampering with the package would lead to awareness of police suspicion).

■

■ It also is clear that the fourth amendment does not require suppression of evidence seized from a private residence where, notwithstanding an unlawful entry by police, a warrant subsequently is issued based on independent information known to police before the entry. *See Segura v. United States,* 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984). Instantly, appellant concedes that there was a sufficient basis for probable cause from independent information known to police prior to their entry into his apartment. A warrant ultimately was obtained on the basis of this prior information and not as a result of anything that police discovered in appellant's apartment. Further, there is nothing in the record to support appellant's assertion that drugs discovered in his apartment were found first in the preliminary sweep rather than in the ultimate warrant search.

■ Finally, police did not violate the "knock and announce rule," Pa.R.Crim.P. 2007 (police in executing a search warrant must give notice before entry of their identity, authority, and purpose). They knocked and gave their identity. When appellant answered the door, police entered and told appellant that they were in the process of obtaining a warrant. Since the police announced their identity, authority, and purpose, the knock and announce rule was not violated.

Accordingly, we find no merit in appellant's arguments and find that the trial court properly admitted the drugs and illegal substances discovered in appellant's apartment at trial.

Judgment of sentence affirmed.

BECK, J., concurs in the result.