612 A.2d 520

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Ricardo LOPEZ, Appellee.**

Superior Court of Pennsylvania.

Argued May 27, 1992.

Filed Aug. 26, 1992.

Karen L. Grigsby, Asst. Dist. Atty., Philadelphia, for Com., appellant.

Marc Neff, Philadelphia, for appellee.

Before CIRILLO, POPOVICH and HOFFMAN, JJ.

POPOVICH, Judge:

This is an appeal from the order of the Court of Common Pleas of Philadelphia County entered on November 20, 1991, suppressing physical evidence and a statement made by Appellee. The Commonwealth contends the lower court erred in suppressing the evidence because the officers were faced with exigent circumstances which justified the warrantless entry and arrest of Appellee.[1] Since we agree that the suppression court erred in suppressing the evidence, we vacate the order and remand for trial.

When reviewing the decision of a suppression court, "[w]e are bound by the facts found in the record ... and may reverse the suppression court only if the legal conclusions drawn from those facts are in error." *Commonwealth v. Whitney*, 511 Pa. 232, 512 A.2d 1152 (1986), quoting *Commonwealth v. Cortez*, 507 Pa. 529, 532, 491 A.2d 111, 112 (1985). See also *Commonwealth v. Trenge*, 305 Pa.Super. 386, 451 A.2d 701 (1982).

Applying the aforementioned standard of review, we find the record reveals the following facts: At a suppression hearing before the Honorable Levan Gordon on August 21, 1991, testimony was heard from the officers involved in the surveillance and search of 429 West Courtland Street in Philadelphia. On March 19, 1990, Officer Sharkey received information from a confidential, reliable informant that Appellee was selling kilos of cocaine from that location.[2] The informant said he had discussed a cocaine purchase with Appellee at that location and had viewed several kilos of cocaine on the premises.

1. The Commonwealth has certified that the suppression order substantially handicaps its prosecution of Appellee. *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985).

2. The informant had previously given Officer Sharkey reliable information concerning narcotics transactions which resulted in seizure of large quantities of cocaine.

Immediately after receiving that information, Officer Sharkey directed Sergeant Perez, Sergeant Tustin, and Corporal Newman to begin surveillance of 429 West Courtland Street, while he applied for a search warrant. The officers parked in an unmarked police car across the street from the premises, and additional officers did the same nearby. After the officers watched 429 West Courtland Street for approximately thirty minutes, they saw a man and a woman exit the house. Officer Perez testified that while the individuals were walking away from the house, the male looked in the direction of the police, then turned and went back to the premises. The man proceeded up the steps to the front door of the house, paused for a moment and then ran away from the premises. Officer Perez said he could not see what the man did while he was at the front door. The officers testified that they feared the man had alerted those persons inside the house to the officers' presence. Consequently, Officer Perez captured the male and female who fled the area, and the other officers proceeded to the house, knocked and announced they were police and then secured the premises.

While at the front door, the officers could see people sitting in the living room, and Officer Newman saw Appellee going up steps to the second floor. After no one responded to their knock and announcement, the officers forced the door open and entered the premises. While securing the premises, Sergeant Tustin went down into the basement where, in plain view, he saw a large cache of cocaine. Also, during the time in which the police were securing the premises, Appellee allegedly told Officer Perez, "I take full responsibility." After Officer Perez advised Appellee of his Miranda rights in Spanish and English, Appellee continued, saying, "My wife has nothing to do with it."

Once the premises were secured, the officers called Officer Sharkey who continued with his application for a search warrant. After receiving notice that the warrant had been approved, the officers seized the cocaine, a triple beam

scale, and proof of Appellee's residency. Officer Sharkey arrived shortly thereafter with a completed search warrant.

At the conclusion of the suppression hearing, the court found as a matter of law that there were no exigent circumstances which justified entry of Appellee's house without a search warrant. The court said the warrant "certainly could have been served later on," and it focused on the officers' testimony which indicated that they were not exactly sure what the individual did when he ran back to the front door of the house.

■■■■ Generally, a warrantless search is presumed unreasonable unless the search is justified by an exception to the warrant requirement. *Commonwealth v. Marconi*, 408 Pa.Super 601, 597 A.2d 616 (1991). A warrantless search will be upheld if there are exigent circumstances such as the threat of destruction of evidence or the threat of physical harm to police officers. *Commonwealth v. Frank*, 413 Pa.Super. 273, 279, 605 A.2d 356, 359 (1992). However, the exigent circumstances justification does not extend to police who manufacture their own exigent circumstances. *Commonwealth v. Ariondo*, 397 Pa.Super. 364, 580 A.2d 341 (1990). When ruling on the existence of exigent circumstances, "There can be no inflexible standard; ... 'the reasonableness of searches and seizures must necessarily be determined on a case-by-case-basis.'" *Commonwealth v. Williams*, 411 Pa.Super. 586, 594, 602 A.2d 350, 354 (1992), quoting *Commonwealth v. Eliff*, 300 Pa.Super. 423, 438–439, 446 A.2d 927, 935 (1982).

In a similar case to that *sub judice*, this court found a warrantless search was supported by exigent circumstances. *See Commonwealth v. Frank*, 413 Pa.Super. 273, 605 A.2d 356 (1992). In *Frank*, the police were conducting a surveillance of an apartment complex where they believed illegal drugs were being stored and sold. While other officers were in the process of obtaining a warrant, the police at the scene arrested an individual, whom they believed to be involved in the operation, when he was about to leave the complex. Because the arrest occurred in broad

daylight and proximate to the apartment of Frank, another suspect, the police feared that Frank might have observed the arrest and could destroy critical evidence. Even though search warrants had not been issued, the police immediately secured Frank's apartment. In *Frank,* we found there were exigent circumstances because although there was "[n]o evidence that appellant was aware of Washington's arrest, the arrest occurred in the open, in broad daylight, and close to appellant's apartment. Certainly, there was an objective basis for the officers to conclude at that time in the totality of the circumstances that a risk existed that appellant observed the arrest and would succeed in destroying critical evidence." *Frank,* 413 Pa.Superior Ct. at 279, 605 A.2d at 359. Certainly, the facts before us present circumstances under which the police officers reasonably believed a risk existed that Appellee had been alerted and evidence would be destroyed. *Cf. Frank, supra.*

This issue was also recently addressed in *Commonwealth v. Williams,* 411 Pa.Super. 586, 602 A.2d 350 (1992), in which an undercover policeman made a drug purchase at a house and was identified as a police officer by another individual while proximate to the house. Although the police did not have a warrant, they immediately secured the house. In *Williams,* this court held that the police did not have to be certain that their identity was known to those inside the house. We stated, "By no means should we confine the showing of exigent circumstances to the discrete event of the greeting; instead the problem was created when a person with apparent ability to blow [the officers'] cover approached the house." *Id.* 411 Pa.Super. 586, 592, 602 A.2d at 353.

■ In the present case, the officers could not see exactly what the man did when he went to the front door of the house. However, the officers reasonably believed the individual ran back to the house because he observed the officers' presence and wished to warn the people who were inside the house. The officers reasonably believed, based on objective facts that a risk existed that Appellee could

succeed in destroying or removing critical evidence from the premises. Based upon the standards set forth in *Frank* and *Williams*, we find that the officers warrantless entry into the premises for the purpose of securing the house was reasonable.

■ Since exigent circumstances do not justify a warrantless search if such circumstances were manufactured by the officers, we must also consider whether the officers' actions precipitated the warrantless entry. In *Frank*, this court noted that the police did not manufacture the exigent circumstances by deciding to arrest the first individual. *Frank*, 605 A.2d at 358. Therein, we held that although the police chose the place to make the arrest, the individual's attempt to leave the apartment was the event which prompted the arrest, and it was not a "case where the police could control the timing of the search." *Id.*, 413 Pa.Super. 279, 605 A.2d at 359. In the present case, the officers were conducting surveillance near the premises. The warrantless entry was precipitated by the individual running back to the house, in an apparent attempt to alert those inside, not by the officers' actions. Therefore, we find the warrantless entry was justified by the exigency.

Having determined that the warrantless entry was proper, we reverse the decision of the court below which suppressed the physical evidence and Appellee's statements. Accordingly, we remand for trial.

Order reversed. Case remanded for trial. Jurisdiction relinquished.

HOFFMAN, J., files a dissenting statement.

HOFFMAN, Judge, dissenting:

I respectfully dissent. The majority finds that the officers reasonably believed that a risk existed that appellee had been alerted to their presence and that evidence would be destroyed. Consequently, they find that exigent circumstances did exist justifying a warrantless entry. I disagree.

The majority asserts that the officers reasonably concluded that the male who left the house knew the identity of the police officers and could have warned those inside. These assertions are without support in the record. Sgt. Perez, who was at most one car length from the man who fled, testified at both the suppression hearing and the preliminary hearing that the male did not knock on the door. N.T., 8/21/91 at 45–48. Moreover, there is no evidence in the record that the male knew that the individuals in the car were police officers or that he alerted those inside in any way. Thus, I do not find it reasonable to conclude that there was a substantial risk that those inside the house were alerted to the presence of the officers and thus, that exigent circumstances existed justifying a warrantless entry into the house.

In addition, I find the cases cited by the majority to be distinguishable. In *Commonwealth v. Williams*, 411 Pa.Super. 586, 602 A.2d 350 (1992), an undercover officer made a drug purchase at a house and was identified as a police officer by another individual in close proximity to the house. Specifically, an unidentified male said "Hello Officer" or words to that effect when the Officer passed him on the sidewalk, about three to five feet from the house. *Id.*, 411 Pa.Superior Ct. at 591, 602 A.2d at 353. Our court found that it was reasonable for the officer to believe that his identity had been revealed and that consequently there was a possibility of the destruction of evidence. Here, there was no evidence that the officer's identity had been revealed.

In *Commonwealth v. Frank*, 413 Pa.Super. 273, 605 A.2d 356 (1992), an arrest took place in broad daylight directly in front of the window of the house under surveillance. Our court held that there was an objective basis for the officers to believe that a risk existed that those inside were alerted to their presence. Specifically, our court held that when the officers drew their weapons and handcuffed an individual in front of the apartment of the appellant, there was a strong possibility that appellant became alerted to their presence. *Id.* 413 Pa.Superior Ct. at 279, 605 A.2d at 359. Here again,

there was no evidence in the record of such police conduct that would have alerted the people inside the house of police presence in the area.

Because I find that no exigent circumstances existed to justify a warrantless entry into the house I would affirm the order of the suppression court.