**COMMONWEALTH OF PENNSYLVANIA Appellees,**

v.

**Dan WALKER Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 24, 2003.

Filed Nov. 14, 2003.

Before: STEVENS, BOWES, and MONTEMURO *, JJ.

MONTEMURO, J.:

¶ 1 Appellant Dan Walker appeals from the judgment of sentence entered March 13, 2003, in the Bucks County Court of Common Pleas, following his bench conviction of possession of a controlled substance and possession of drug paraphernalia. Appellant's sole issue on appeal challenges the trial court's denial of his pretrial suppression motion.

¶ 2 On August 29, 2002, Appellant was arrested in a motel room in Bucks County for possession of a controlled substance (crack cocaine) and possession of drug paraphernalia (two crack pipes, two butane lighters, copper wire screen, a silver spoon, and a box of baking soda). Appellant filed an omnibus pretrial motion, seeking, *inter alia*, suppression of all the physical evidence seized from his motel room during what he alleges was an unconstitutional warrantless search. On March 13, 2003, the trial court held a hearing on Appellant's motion, during which the following relevant facts were elicited.

¶ 3 During the morning of August 29, 2002, Officer Bryan White of the Falls

* Retired Justice assigned to Superior Court.

Township Police Department received a radio call indicating that there was drug activity in Room 15 at the New Falls Motel, where previous drug related investigations and arrests had been conducted.

¶ 4 Officer White proceeded immediately to the motel; he was in full uniform and traveling in a marked police car. As soon as he entered the motel parking lot, he saw Appellant standing in the doorway of Room 15. As he drove to within seven to eight feet of Appellant, he observed in Appellant's left hand a glass cylinder, four inches in length and a quarter of an inch in diameter, with burn marks on the end of it. Based on his training and experience, Officer White concluded that the item was a crack pipe.[1]

¶ 5 As Officer White approached in his car, Appellant made eye contact with him, then quickly turned, reentered the room, and closed the door. The officer exited his car and followed Appellant into the motel room. At that point, he observed Appellant placing the crack pipe into a dresser drawer, and immediately placed Appellant under arrest. After doing so, he observed, in plain view, other drug paraphernalia in the same dresser drawer. In addition, a patdown following Appellant's arrest revealed two clear plastic baggies containing 24.5 grams of crack cocaine.

¶ 6 The trial court denied Appellant's motion to suppress and Appellant immediately proceeded to a bench trial, during which he stipulated to the facts presented during the earlier suppression hearing. The court found Appellant guilty of both charges, and sentenced him to 5½ to 11 months' imprisonment for possession of cocaine and a concurrent 11 months' probation for possession of drug paraphernalia. This timely appeal followed.

¶ 7 Appellant's sole issue on appeal challenges the trial court's denial of his pre-trial motion to suppress:

DID THE LOWER COURT ERR WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS THE PHYSICAL EVIDENCE SEIZED BY DETERMINING THAT THE ARRESTING POLICE OFFICER COULD ENTER THE CLOSED MOTEL ROOM OF APPELLANT, WITHOUT A WARRANT, AND SEIZE SUSPECTED ILLEGAL CONTRABAND AND NARCOTICS?

(Appellant's Brief at 4). For the reasons set forth below, we affirm.

■ ¶ 8 Preliminarily, we note that our review of a trial court's denial of a motion to suppress evidence is well-settled:

We determine whether the court's factual findings are supported by the record and whether the legal conclusions drawn from them are correct. Where, as here, it is the defendant who is appealing the ruling of the suppression court, we consider only the evidence of the prosecution and so much of the evidence for the defense which remains uncontradicted when fairly read in the context of the whole record. If, upon our review, we conclude that the record supports the factual findings of the suppression court, we are bound by those facts, and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. DeJesus*, 567 Pa. 415, 787 A.2d 394, 401 (2001) (internal citations omitted), *cert. denied*, 537 U.S. 1028, 123 S.Ct. 580, 154 L.Ed.2d 441 (2002).

---

1. Officer White summarized that he had been on the job for a year and a half at the time of Appellant's arrest, and had made approximately 50 arrests, 20 of which involved drugs and approximately 10 involving crack pipes similar to the one Appellant was holding.

¶ 9 Based on the constitutional guarantee of freedom from unreasonable searches and seizures, courts have held that warrantless searches and seizures in a private home are presumptively unreasonable. *Commonwealth v. Roland*, 535 Pa. 595, 637 A.2d 269, 270 (1994) (citing *Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987)). "Absent consent or exigent circumstances, private homes may not be entered to conduct a search or to effectuate an arrest without a warrant, even where probable cause exists." *Commonwealth v. Griffin*, 785 A.2d 501, 505 (Pa.Super.2001). The Pennsylvania Supreme Court has listed a number of factors that should be considered in determining whether exigent circumstances exist in a given situation to justify a warrantless entry and search of a private residence. These include: (1) the gravity of the offense; (2) whether there is a reasonable belief that the suspect is armed; (3) whether there is a clear showing of probable cause; (4) whether there is a strong showing that the suspect is within the premises to be searched; (5) whether there is a likelihood that the suspect will escape; (6) whether the entry was peaceable; (7) the time of the entry, *i.e.,* day or night; (8) whether the officer was in hot pursuit of a fleeing felon; (9) whether there is a likelihood that evidence may be destroyed; and (10) whether there is a danger to police or others. *Roland, supra* at 270–71 (citations omitted). However, "mere speculation that evidence may be destroyed because suspects may learn of police activity is inadequate to justify a warrantless entry, and in any event police may not bootstrap themselves into exigencies by their own conduct." *Commonwealth v. Melendez*, 544 Pa. 323, 676 A.2d 226, 231 (1996) (emphasis added) (discussing *Commonwealth v. Mason*, 535 Pa. 560, 637 A.2d 251 (1993)). Here, based on the tip, his own observations, and Appellant's evasive behavior, Officer White clearly had probable cause to believe that Appellant was in possession of illegal narcotics. Moreover, in considering the factors outlined by the *Roland* Court, we conclude that Officer White's warrantless entry into Appellant's motel room was justified by exigent circumstances.

¶ 10 Although Officer White had no reason to believe that Appellant was armed, would be a danger to the officer or others, or might easily escape, other factors weigh heavily in favor of a finding of exigent circumstances. First, Appellant was suspected of possession of narcotics and paraphernalia, both serious offenses. As discusssed *supra,* there was more than a clear showing of probable cause, and no question that Appellant would be in the motel room, as the officer personally saw him enter it. The time of entry was mid-morning, not at night, "which is a particularly suspect time for searches to be conducted." *Roland, supra* at 271. Moreover, the officer's entry was peaceable. Although the door was closed, it was not latched; Officer White testified that it was "[j]ust a matter of pushing the weight of the door." (N.T. Suppression Hearing, 3/13/03, at 36). Finally, because drugs and crack pipes may be easily disposed, there was a strong likelihood here that evidence would be destroyed. Immediately after seeing the officer approach, and while holding a crack pipe in plain view, Appellant turned, reentered the room, and closed the door. It was certainly reasonable for the officer to determine that Appellant might destroy any narcotics and paraphernalia stored in that room.

¶ 11 We find this Court's decisions in *Commonwealth v. Lopez*, 417 Pa.Super. 356, 612 A.2d 520 (1992), and *Commonwealth v. Williams*, 411 Pa.Super. 586, 602 A.2d 350 (1992), analogous. In *Lopez*, the police received a tip from an informant

that the defendant was selling cocaine from 429 West Courtland Street in Philadelphia. While three officers conducted surveillance of the residence, a fourth left to apply for a search warrant. The officers were in an unmarked car parked across the street when a man and a woman exited the residence. While walking away, the man looked in the direction of the officers, and then turned and went back to the residence. He proceeded up the steps, paused for a moment, and then fled. Although the officers could not see what the man did at the front door, they feared that he had alerted those in the house of the officers' presence. Therefore, they proceeded to enter the house before the warrant arrived.

¶ 12 On appeal, this Court held that the warrantless search was supported by exigent circumstances:

> In the present case, the officers could not see exactly what the man did when he went to the front door of the house. However, the officers reasonably believed the individual ran back to the house because he observed the officers' presence and wished to warn the people who were inside the house. The officers reasonably believed, based on objective facts that a risk existed that Appellee could succeed in destroying or removing critical evidence from the premises.

*Lopez, supra* at 522. The same is true here.

¶ 13 Similarly, in *Williams, supra,* an officer, prompted by citizen complaints, conducted an undercover buy of cocaine at a residence on Poplar Street in Philadelphia. He approached a woman sitting on the porch and requested "two." She, in turn, knocked on the floorboards and repeated his request. One floorboard moved, and a male hand stuck out two vials of cocaine. As the officer walked away from the residence, an unidentified

man walked past him and said, "Hello Officer." Fearing that his cover had been blown, the officer immediately informed his superior, who instructed other officers near the scene to move on the house immediately. The police entered the residence and found drugs and paraphernalia.

¶ 14 On appeal, this Court affirmed the trial court's denial of the appellant's suppression motion, finding that exigent circumstances existed to justify the warrantless search: the crime being investigated was a grave offense; there was sufficient probable cause to believe a crime had been committed on the premises; and a strong reason existed to believe the suspect was still present. Moreover, the Court found that "[i]f the officer's cover has truly been blown, the suspects and the evidence could well have disappeared before the officers would have had time to get a search warrant." *Id.* at 353. Finally, the Court deferred to the trial court's finding that the mode of entry was peaceable. Again, the factual similarities to the case *sub judice* are clear. *See also Commonwealth v. Frank,* 413 Pa.Super. 273, 605 A.2d 356 (1992) (finding exigent circumstances existed to conduct warrantless search of suspected drug stash house when co-conspirator was arrested in alleyway behind apartment in broad daylight; "[c]ertainly there was an objective basis for the officers to conclude at that time in the totality of the circumstances that a *risk* existed that appellant observed the arrest and would succeed in destroying critical evidence.") (emphasis in original).

¶ 15 Appellant argues, however, that the Supreme Court's decisions in *Roland, supra,* and *Mason, supra,* compel a different result.

¶ 16 In *Roland,* the police responded to a call from a teenage male who claimed that he had been assaulted at a party where there was underage drinking and

marijuana use. When the police arrived at the house to investigate, the appellant homeowner answered the door and, while it was open, the officers observed several minors sitting in close proximity to beer cans. When the minors saw the officers, they attempted to shield the cans from view. The police then entered the home and conducted a search, during which they found numerous opened and unopened cans of beer, as well as some marijuana and paraphernalia. The appellant was subsequently arrested and convicted of furnishing liquor to minors, possession of a small amount of marijuana, and possession of drug paraphernalia. This Court affirmed on appeal.

¶ 17 The Pennsylvania Supreme Court, however, held that the search was invalid. Foremost in the Court's analysis was the fact that the offense being investigated was a minor one, *i.e.*, the summary offense of underage drinking.[2] The Court found that this, coupled with the fact that the police were not pursing a fleeing felon, that there was no danger to police or others, that there was no reason to believe any of the occupants were armed, and that the entry occurred at night, weighed against a finding of exigent circumstances. Moreover, the Supreme Court disagreed with this Court's finding that there was a risk that evidence would be destroyed or that minors would flee from the scene before a warrant could be obtained. The Court noted that "[b]eer cans are not ... a type of evidence that can be readily destroyed, as, for example, by flushing them down a drain or burning them." *Id.* at 272. In addition, the Court stated that if any of the minors attempted to leave the scene while in possession of a beer or while intoxicated, they could have been arrested. *See* 18 Pa.C.S.A. §§ 5505, 6308.

Therefore, the Court concluded that "given the minor nature of the offense that triggered the police entry, and the lack of exigent circumstances supporting that entry, the denial of appellant's motion for suppression was erroneous." *Roland, supra* at 272.

¶ 18 Here, by contrast, the matter being investigated was not simply a summary offense—a fact which the *Roland* Court found particularly important—as Officer White saw Appellant holding a used crack pipe. It was reasonable for him to assume that Appellant was also in possession of crack cocaine. Possession of narcotics and paraphernalia are certainly more serious offenses than underage drinking. Moreover, Appellant easily could have disposed of the crack pipe and drugs. Finally, the entry was peaceable and occurred during the daytime. Therefore, we find the facts in *Roland* distinguishable.

¶ 19 In *Mason*, the Supreme Court focused on application of the independent source doctrine. There, an undercover police officer and an informant met with an intermediary to purchase cocaine. The intermediary then entered an apartment and returned minutes later with the cocaine. The three left in a car, and the intermediary was arrested two blocks away from the apartment. The intermediary informed the police that he had purchased cocaine from the occupants of apartment 404–D, and that more cocaine was present in the apartment. Although one officer left to secure a search warrant, before he returned, the remaining officers decided to secure the premises. Concerned that word of the intermediary's arrest might reach the suspects and that evidence might be destroyed, the officers knocked on the door of the apartment. When they re-

---

**2.** The Court specifically noted that there was no testimony indicating that the police observed any marijuana use prior to entering the residence. *See Id.* at 271, 637 A.2d 251.

ceived no response, they forcibly burst through the door with a battering ram.

¶ 20 Operating under the assumption that no exigent circumstances existed to justify the officers' conduct, and finding that the independent source doctrine did not apply, the Supreme Court held that the evidence seized during the warrantless search must be suppressed:

It is bad enough that some circumstances may require that we approve of bursting through doors at all, but to expand police authority to include batting down doors without a warrant or exigent circumstances, taking the occupants into custody, performing the necessary cursory searches to insure their own safety, and waiting for the arrival of a warrant that they *assume* will be granted, is beyond the bounds of constitutionally acceptable police conduct.

*Id.* at 256–57 (emphasis in original). In *Mason,* there was no suggestion that the appellant had actually learned of the intermediary's arrest so as to create a likelihood that she would destroy crucial evidence. Here, however, the suspect looked directly at the officer, and then attempted to evade arrest. Moreover, here, unlike in *Mason,* the entry into the motel room was peaceful; the officer simply pushed on the door.

¶ 21 Therefore, we conclude that the trial court properly denied Appellant's motion to suppress and, accordingly, affirm.

¶ 22 Judgment of sentence affirmed.