# Commonwealth v. Moyer

464

C.P. of Carbon County, no. 583 CR 02.

*Jean A. Engler,* for the Commonwealth.
*George T. Dydynsky,* for defendant.

NANOVIC, *J.,* March 29, 2004—The defendant in this case, Francis L. Moyer, has filed a motion to suppress evidence, claiming police officers illegally entered his home and arrested him. He also asks that the charges against him for resisting arrest[1] and persistent disorderly conduct[2] arising from this incident be dismissed.

## FACTUAL BACKGROUND

On November 3, 2002, at approximately 1 a.m., the police received a report of a domestic dispute occurring on the street outside defendant's home at 241 Carbon Street in Lehighton, Carbon County, Pennsylvania. Officer Scott Prevosnyak and Corporal Neal Ebbert of the Lehighton Borough Police Department arrived at the

---

1. 18 Pa.C.S. §5104.
2. 18 Pa.C.S. §5503(a)(1).

scene within approximately two minutes of the call. Upon their arrival, a neighbor who had witnessed the incident told the officers that "they" were "going at it again," presumably referring to the defendant and his girlfriend, Sally Hartman, and that the two had been outside yelling and screaming at one another and that defendant had smashed the window of a vehicle with rain spouting while Hartman was inside. Neither the vehicle nor Hartman were present when the police arrived, however, the police did observe glass on the roadway and eight feet of rain spouting lying on the steps and sidewalk in front of defendant's home. The neighbor did not know where Hartman had gone but stated that defendant was inside his home. (N.T., pp. 9, 25.)

Prior to this incident, the police were aware that the relationship between defendant and Hartman was volatile and often violent. Numerous protection from abuse orders had been obtained by each against the other. (N.T., pp. 22-23.) Officer Prevosnyak testified that he himself had investigated at least eight or nine prior instances involving domestic violence and property disputes between the two. (N.T., p. 12.) When he responded to one call 10 to 12 months earlier, he arrived to find Hartman with a broken nose. The police were also aware that the two had three young children who resided in the home at 241 Carbon Street.

With the intent of determining the whereabouts and condition of Hartman, the police knocked on the front door of defendant's home and were met there by defendant.[3] When questioned as to what had happened, defendant denied that anything had happened. When asked

3. To be precise, the home at this location is a double home with one side being numbered as 241 Carbon Street and the other 243 Carbon Street, both sides being owned by defendant. When the police

to see Hartman in order to check on her welfare, defendant denied that there had been a problem and stated that the police were not needed. When asked for permission to enter the home, defendant began to close the door. As he did so, Corporal Ebbert placed his foot inside the doorway and his arm against the upper half of the door. Defendant pushed from the opposite direction. While defendant pushed to close the door and Corporal Ebbert struggled to keep the door open, the defendant suddenly released the door. When he did so, both Corporal Ebbert and Officer Prevosnyak, who was pushing Corporal Ebbert from behind, plunged headlong into the home where they stumbled into the defendant; all three collided against the wall on the opposite side of the front room. (N.T., p. 63.) There the defendant began swinging and flailing wildly at both officers. The officers attempted without success to calm down and control the defendant and ordered him to cease and desist. Ultimately, defendant was tackled to the ground where he was subdued and handcuffed. Once defendant was under control, Officer Prevosnyak and Corporal Ebbert searched the residence. Hartman was not present; the children were asleep in bed.

Defendant, who by this time was under arrest, was taken outside by the police. While outside, defendant made loud, vocal noises and continued to struggle with Corporal Ebbert. Corporal Ebbert repeatedly ordered defendant to quiet down, requests ignored by defendant. Not until Corporal Ebbert placed defendant up against

---

knocked on the door at 241 Carbon Street, defendant appeared at the door of 243 Carbon Street, the other half of the home, and told the officers they were at the wrong home. A common porch fronts both homes. The officers walked across this porch and met defendant at the door of 243 Carbon Street.

the police cruiser did defendant calm down. At this point, it was approximately 1:15 a.m.

Later that evening, Hartman returned a call from the police and advised she did not want to press charges. Defendant has been charged with resisting arrest and persistent disorderly conduct.

## DISCUSSION

In this case, we must decide whether police are authorized to force their way into the home of a person suspected of abusing his paramour, absent a warrant, when the victim of the abuse is believed to be inside and in danger of further abuse. We must further determine whether defendant's prosecution for resisting arrest and persistent disorderly conduct is dependent upon the legality of the police's entry into defendant's home where, but for that entry, defendant would not have engaged in the conduct with which he is charged.

### *Validity of Search*

Defendant challenges the legality of the police entry and search of his home pursuant to the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. In examining the police's authority to enter and search defendant's home, we begin with the premise that a search, without consent, requires probable cause and that warrantless searches are presumed to be unreasonable. *Commonwealth v. Walker,* 836 A.2d 978, 981 (Pa. Super. 2003).[4]

---

4. Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment of the United States Constitution protect against unreasonable searches and seizures. Probable cause is the standard by which

In this case, defendant did not consent to the warrantless entry into his home.

The protections of the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution are particularly demanding when an exception to the warrant requirement is claimed with respect to a suspect's home, the primary refuge from government intrusion. *Commonwealth v. Richter,* 791 A.2d 1181, 1184 (Pa. Super. 2002). One well-recognized exception, and that relied upon by the Commonwealth in this case, is that of exigent circumstances. *Commonwealth v. Griffin,* 785 A.2d 501, 505 (Pa. Super. 2001).

In examining the exigent circumstances exception in a case involving a reported domestic dispute, the Superior Court, in an en banc decision, wrote:

"The exigent circumstances exception to the warrant requirement recognizes that some situations present a compelling need for instant arrest, and that delay to seek a warrant will endanger life, limb or overriding law enforcement interests. In these cases, our strong preference for use of a warrant must give way to an urgent need for immediate action.

"In determining whether exigent circumstances exist, a number of factors are to be considered. Among the factors to be considered are: (1) the gravity of the offense,

---

reasonableness is measured under these constitutional mandates. *Commonwealth v. Petroll,* 696 A.2d 817, 825 n.5 (Pa. Super. 1997), *aff'd,* 558 Pa. 564, 738 A.2d 993 (1999). The determination of probable cause is based upon the "totality of the circumstances" test set forth by the United States Supreme Court in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and adopted by the Pennsylvania Supreme Court in *Commonwealth v. Gray,* 509 Pa. 476, 503 A.2d 921 (1985).

(2) whether the suspect is reasonably believed to be armed, (3) whether there is above and beyond a clear showing of probable cause, (4) whether there is a strong reason to believe that the suspect is within the premises to be searched, (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended, (6) whether the entry was peaceable, and (7) the time of the entry, *i.e.,* whether it was made at night. These factors are to be balanced against one another in determining whether the warrantless intrusion was justified.

"Other factors may also be taken into account, such as whether there is hot pursuit of a fleeing felon, a likelihood that evidence will be destroyed if police take the time to obtain a warrant, or a danger to police or other persons inside or outside the dwelling." *Commonwealth v. Richter, supra,* 791 A.2d at 1184-85. (quotations and citations omitted)

In dissent, Judge Johnson noted that "[a]ll decisions made pursuant to the exigent circumstances exception [to the warrant requirement] must be made cautiously, for it is an exception which by its nature can very easily swallow the rule unless applied in only restricted circumstances." *Id.* at 1188. (quotations and citations omitted) "Ultimately, the exigent circumstances exception is a balancing of an individual's right to be free from unreasonable intrusions against the needs of law enforcement in investigating a crime quickly, and preventing the disappearance of evidence necessary to convict criminals." *Commonwealth v. Roland,* 535 Pa. 595, 608, 637 A.2d 269, 275 (1994) (Montemuro, J., dissenting).

"Before agents of the government may invade the sanctity of the home, the burden is on the government to

demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries." *Commonwealth v. Santiago,* 736 A.2d 624, 631 (Pa. Super. 1999), *appeal denied,* 561 Pa. 665, 749 A.2d 470 (2000). The "police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests." *Welsh v. Wisconsin,* 466 U.S. 740, 749-50, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984). This is particularly true when reviewing a warrantless intrusion into an individual's home where the expectation of privacy protected under the Fourth Amendment has been held to be greatest. *Commonwealth v. Gutierrez,* 750 A.2d 906, 909 (Pa. Super. 2000).

"The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home—a zone that finds its roots in clear and specific constitutional terms: 'The right of the people to be secure in their . . . houses . . . shall not be violated.' That language unequivocally establishes the proposition that '[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.' *Silverman v. United States,* 365 U.S. 505, 511, 5 L.Ed.2d 734, 81 S.Ct. 679 [683], 97 A.L.R.2d 1277. In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton v. New York,* 445 U.S. 573, 589-90, 100 S.Ct. 1371, 1381-82, 63 L.Ed.2d 639, 653 (1980).

Indeed, "it is difficult to imagine a more severe invasion of privacy than the nighttime intrusion into a private home." *Jones v. U.S.,* 357 U.S. 493, 498, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958).

In *Commonwealth v. Wright,* our Supreme Court stated:

"It is widely recognized that situations involving the potential for imminent physical harm in the domestic context implicate exigencies that may justify limited police intrusion into a dwelling in order to remove an item of potential danger." 560 Pa. 34, 40, 742 A.2d 661, 664 (1999).

The volatility of domestic disputes and the threat of imminent violence may, under certain circumstances, justify a warrantless search of a residence to ensure the safety and protection of persons suspected of being abused. Whether such is, in fact, the case depends on the nature, extent and source of the police's knowledge, the existence of probable cause to believe a victim is in danger, and the severity and immediacy of the harm reasonably suspected. Critical to a determination of exigent circumstances is whether the delay in obtaining a warrant would risk the infliction of serious bodily injury.

We find, and the Commonwealth concedes, that while the police at the time they entered the defendant's residence had probable cause to believe a crime had been committed in front of defendant's home and that defendant committed the crime, they did not have grounds to arrest defendant. (N.T., pp. 47, 93-94.) The authority to arrest conferred by section 2711 of the Crimes Code (probable cause arrests in domestic violence cases) did not exist because there was no evidence of recent physical injury to Hartman. Nor generally does the power to

arrest exist for a misdemeanor offense committed outside of the presence of the police. *Commonwealth v. Smith,* 380 Pa. Super. 484, 489, 552 A.2d 292, 294 (1988), *appeal denied,* 524 Pa. 596, 568 A.2d 1247 (1989); *Commonwealth v. Streater,* 422 Pa. Super. 502, 619 A.2d 1070 (1993) (en banc), *appeal discontinued* by 534 Pa. 653, 627 A.2d 731 (1993).

The question then becomes, is the presence of probable cause that a crime of domestic violence has been committed, outside the presence of the police and outdoors, in front of the alleged assailant's home, sufficient in and of itself to justify a warrantless search of the assailant's home for the alleged victim, when the police do not know where the victim is, do not know whether the victim has been injured, and do not know whether the victim is in continued danger. The neighbor's statement to the police that she did not know where Hartman was meant either that she did not know whether or not Hartman was inside the home, or that she knew that Hartman was not in the home and had left the scene but did not know where Hartman had gone.

At best, the information upon which the Commonwealth relies to validate its search of defendant's home is uncertain and inconclusive. Perhaps Hartman was inside the home, perhaps she wasn't. While sufficient to support the possibility that Hartman may have been in the home, this level of suspicion is not sufficient to form an objective, reasonable belief at the time police entered defendant's home that Hartman was probably in the home.

Constitutionally, probable cause to search requires a fair probability that contraband or the items searched for

will be found in a particular place. *Commonwealth v. Torres,* 564 Pa. 86, 96, 764 A.2d 532, 537 (2001). "Probable cause [to arrest] exists when the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed. . . . Mere suspicion is not a substitute for probable cause." *In the Interest of O.A.,* 552 Pa. 666, 676, 717 A.2d 490, 495 (1998); see also, *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed.2d 1879 (1949) (probable cause is a "practical non-technical standard"). "It is only the probability, and not a *prima facie* showing, of criminal activity that is the standard of probable cause for a warrantless arrest." *Commonwealth v. Quiles,* 422 Pa. Super. 153, 167, 619 A.2d 291, 298 (1993) (en banc). (emphasis in original) In this case, at the time the police entered defendant's home, they did not possess probable cause to believe that a crime had been, was being or would be committed inside the home or that Hartman was in imminent danger of further abuse or in urgent need of medical attention.

This absence of probable cause is fatal to the Commonwealth's claim that exigent circumstances justified warrantless entry into defendant's home. "Absent probable cause and exigent circumstances, the entry of a home without a warrant is prohibited under the Fourth Amendment." *Commonwealth v. Roland,* 535 Pa. at 599, 637 A.2d at 270. Exigent circumstances alone, unaccompanied by probable cause, cannot justify the search. Nor can the good faith belief of the police that Hartman might have been in the home and might be in danger. See *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887 (1991) (rejecting, on state constitutional grounds, good faith ex-

ception to the exclusionary rule). At the same time, the absence of probable cause to believe Hartman was inside defendant's home when the police entered necessarily and critically undermines the Commonwealth's assertion of exigent circumstances.

### Resisting Arrest

Having determined that the officers were not justified in entering defendant's home by force, the next question to be addressed is whether a defendant can be convicted of resisting arrest for physically opposing an illegal search of his home. The elements of resisting arrest are set forth in section 5104 of the Crimes Code:

"A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance." 18 Pa.C.S. §5104.

In *Commonwealth v. Biagini,* 540 Pa. 22, 655 A.2d 492 (1995), the court found in the context of a police officer's investigation of a public disturbance that defendant's physical resistance to the officer while inside defendant's home could not sustain a charge of resisting arrest since the arrest, being unsupported by probable cause, was illegal. *Id.* at 32, 40, 655 A.2d at 497, 501. In *Biagini,* the only element under consideration was the lawfulness of the arrest. With respect to this element, the court held that a "lawful" arrest, in contrast to an "unlawful" one, is an essential element of the offense of resisting arrest. *Id.* at 38, 655 A.2d at 500.

The same reasoning dictates that when the search of a residence is without probable cause, even though undertaken in good faith, police who are not lawfully present in a suspect's home are not lawfully discharging their duties at the time the homeowner physically resists an illegal and forcible entry into his home. Under such circumstances, the arrest is illegal and will not support the charge of resisting arrest.[5] We hasten to add that even under such circumstances, if the homeowner, by the nature or extent of his resistance, "attempts to cause or intentionally or knowingly causes bodily injury to a police officer . . . *in the performance of duty*" such conduct will support a charge of aggravated assault pursuant to 18 Pa.C.S. §2702(a)(3). *Commonwealth v. Biagini,* 540 Pa. at 34, 655 A.2d at 498. (emphasis in original) "[T]here does not exist in Penn-

---

5. To argue in the context of police conduct which exceeds lawful authority that defendant's resistance was directed at preventing the police from searching his home, rather than preventing his arrest, is without merit. In essence, such argument asserts that the resistance for which the Defendant is being charged is that against the officer's *"discharging any other duty"* element of resisting arrest, rather than that of the officer's "effecting a lawful arrest." This same position was taken by the dissent in *Biagini,* and rejected by the majority. In the dissent's view, the majority ignored the element of preventing the discharge of any other duty as an alternate element of resisting arrest and improperly concentrated on the element of the lawfulness of the arrest. *Id.* at 39-40, 655 A.2d at 501. (emphasis in original) In the dissent's view, even though the arrest was illegal, because the police were acting within the scope of their employment (*i.e.,* the investigation of a public disturbance), the defendant's resistance satisfied this element of the offense. The reasoning of the majority prohibits unlawful police conduct from simultaneously serving as the basis of the "discharge of any other duty" element of resisting arrest.

sylvania a right to resist arrest, [in] any circumstances."
*Id.* at 36, 655 A.2d at 499.[6]

## Disorderly Conduct

The defendants in *Biagini* argued, as does the defendant here, that it was the unlawful actions of the police which provoked their responses and that, since the initial encounter was an "unlawful arrest," all of the criminal charges which arose as a consequence of that arrest should be dismissed. The Supreme Court rejected this argument.

It is not the law of this Commonwealth that we "focus upon the initial actions of the police officers as a catalyst for all that flowed therefrom," and, if such actions were improper, that we suppress all evidence which was subsequently obtained, or exempt from criminal liability all conduct of a defendant which follows. To do so would impose upon the police responsibility for a defendant's own conduct. *Commonwealth v. Biagini, supra* (only where the legality of the arrest is an element of the offense charged will an unlawful arrest act to bar the prosecution of such offense). Therefore, our conclusion that the officers' entry into defendant's home was improper is not a defense to criminal charges arising from

---

6. In this case, as noted by the Commonwealth, while there appears to be sufficient evidence to justify a charge of aggravated assault on the police officers during their struggle with defendant, the police have not filed a charge for aggravated assault. The court in *Biagini* also noted the distinction between the legality of the arrest and the manner of executing the arrest. When the police engage in the use of excessive/deadly force in making an arrest, the right of self-defense allows an individual to protect himself in this extreme situation. *Commonwealth v. Biagini,* 540 Pa. 22, 36, 655 A.2d 492, 499 (1995).

defendant's conduct which occurred after such entry and for which the prima facie elements of the crimes charged have been made out. See also, *Commonwealth v. Britt,* 456 Pa. Super. 633, 691 A.2d 494 (1997) (reversing trial court's order suppressing all evidence related to an incident in which defendant was prosecuted for aggravated assault and reckless endangerment when, in a violent and reckless manner, after being unlawfully detained, he fled from police officers who had properly identified themselves, injuring one officer), *appeal denied,* 549 Pa. 695, 700 A.2d 437 (1997).

The charge of persistent disorderly conduct at issue here provides:

"(a) Offense defined.—A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

"(1) engages in fighting or threatening, or in violent or tumultuous behavior; . . .

"(b) Grading.—An offense under this section is a misdemeanor of the third degree if the intent of the actor is to cause substantial harm or serious inconvenience, or if he persists in disorderly conduct after reasonable warning or request to desist. Otherwise disorderly conduct is a summary offense." 18 Pa.C.S. §5503(a)(1) and (b).

It is apparent from this definition that a lawful search is not an element of this offense. Equally apparent is that "being both vulgar and loud to a police officer, while in a private residence, does not constitute disorderly conduct." *Commonwealth v. Biagini,* 540 Pa. at 27-28, 655 A.2d at 495. However, it is defendant's conduct while outside his home which supports this charge.

There is no dispute that defendant fought with the police and, by Officer Prevosnyak's account, continued to struggle loudly and violently while being taken to the police car, to the point that Corporal Ebbert placed defendant on top of the police cruiser to again subdue him. Officer Prevosnyak testified that the defendant was repeatedly told to calm down and quiet down, both inside and outside the house. Defendant's behavior once outside the house clearly created a public annoyance, inconvenience or alarm, or recklessly created a risk thereof; it occurred in a residential neighborhood after 1 a.m. Therefore, a prima facie showing of each element of persistent disorderly conduct has been made out.

## CONCLUSION

In accordance with the foregoing, the charge of resisting arrest, Count I of the information, will be dismissed. The balance of defendant's motions to suppress and to quash the information will be denied.

## ORDER

And now, March 29, 2004, upon consideration of defendant's motions to suppress and to quash information, and after hearing thereon, it is hereby ordered and decreed that Count I of the information (resisting arrest) be and is hereby quashed and said charge, that of resisting arrest, be and is hereby dismissed.

In all other respects, defendant's motion is denied.